Robert J. VENES and Jane
Venes, Respondents,

v.

PROFESSIONAL SERVICE BUREAU,
INC., Appellant.

No. C0–84–69.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Mark G. Stephenson, Rochester, for respondents.

Allan J. Zlimen, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., SEDGWICK and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Professional Services Bureau (PSB) appeals from a judgment awarding Robert and Jane Venes damages for violations by PSB of the Fair Debt Collection Practices Act. The jury found that PSB's attempt to collect interest not owed to the underlying creditor was an unfair practice, and that its collection calls were harassment under the act. It awarded Venes damages for emotional distress, out-of-pocket expenses, and attorney fees for a prior action establishing that PSB was not entitled to interest. The trial court also awarded statutory damages and attorney fees for the instant action. PSB appeals only the jury awards. We affirm.

## FACTS

Robert and Jane Venes are farmers living in Waukon, Iowa. Their farm has suffered heavy financial losses. From 1975–1976, Venes were forced to assign all of their income except $300 a month to the mortgage holder of the farm to prevent foreclosure. The farm operation started improving in 1977.

The Venes had major medical expenses not covered by insurance, including the birth of children in 1976 and 1978. In addition they paid bills for extended cancer treatment for both Robert Venes' father and brother. The brother died in 1978 and

the father in 1980. By 1978 Venes were unable to keep up with payments owed to the Mayo Clinic for family medical bills.

The Mayo Clinic assigned a balance of $552.40 to PSB for collection. The clinic has a long-standing policy of not charging patients interest and did not authorize PSB to collect interest on the Venes account. PSB employees made a series of collection calls to Venes, starting in September 1979 and following at approximately two week intervals.

Jane Venes testified that she received at least four calls although she told the first caller that her family did not deal with collection agencies. She hung up on one caller when his questions became detailed and prying. He immediately called back. She said the calls disrupted her work schedule and left her with the impression that PSB's object was to keep her on the telephone as long as possible to interrupt her day as much as possible.

Robert Venes received six calls. He told callers that he had not received notice of the assignment and would deal only with Mayo Clinic. During one call a PSB employee who identified himself as "Mr. West" became abusive. He called Venes a "deadbeat" and threatened, "If you know what's good for you and your family, you'll stay out of the state of Minnesota." West refused to reveal his real name in that or subsequent calls, although Robert Venes repeatedly requested it.

In April 1980, PSB brought an action against Venes in Minnesota. The complaint sought interest on the account balance from December 14, 1977. Due to a communication problem between Venes and their Minnesota attorney, they failed to answer the complaint. A default judgment for $690, including $107 interest, was obtained and filed in Venes' home county in Iowa.

Robert Venes paid the principal amount to the Mayo clinic and traveled to Rochester to hire another attorney to reopen the interest issue. Venes incurred attorney fees of $3,827.40 in vacating the judgment and bringing a motion for summary judg-

ment to prevent collection of the interest. The trial court dismissed PSB's interest claim on the grounds that the Mayo clinic does not charge patients interest as a matter of policy and that PSB has no greater rights than its assignor.

Venes subsequently brought action against PSB for violation of the Fair Debt Collection Practices Act based on the calls and PSB's suit to collect interest.

At trial Robert Venes testified that PSB's conduct had been irritating, insulting, and threatening and had angered him. He said he always had been a nervous person. He claimed the stress of the calls and the litigation aggravated his preexisting medical problems, such as migraines, ulcers and his spastic bowel syndrome (loss of control over bowel movements). Jane Venes confirmed that calls irritated her husband's nervous condition.

The jury awarded Venes $1,000 for out-of-pocket expenses, $3,900 for attorney fees for the prior action, and $6,000 for emotional distress. In addition, the trial court awarded $2,000 statutory damages and $1,500 attorney fees for the instant action. PSB appealed the damage awards for emotional distress, for out-of-pocket expenses and for attorney fees incurred in the prior action.

## ISSUES

1. Was PSB's conduct sufficiently extreme and outrageous to justify an award of damages for emotional distress?

2. Did the trial court err by submitting attorney fees for a prior action to the jury as an element of actual damages?

3. Was there adequate evidence to support the award for out-of-pocket expenses?

4. Was Venes' closing argument improper and prejudicial?

## ANALYSIS

### I.

■ First, PSB challenges the award of damages for emotional distress. A con-

sumer injured by a debt collector's failure to comply with the provisions of the Fair Debt Collection Practices Act is entitled to recover actual damages, 15 U.S.C. 1692k (1982), including damages for intentional infliction of emotional distress. *Carrigan v. Central Adjustment Bureau,* 502 F.Supp. 468 (N.D.Ga.1980).

The jury, by special verdict, found that PSB violated 15 U.S.C. § 1692f by attempting to collect interest not due the underlying creditor. It also found that PSB harassed Venes in violation of one or more subdivisions of 15 U.S.C. § 1692d:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property or any person.

\* \* \* \* \* \*

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. \* \* \*

(6) \* \* \* [T]he placement of telephone calls without meaningful disclosure of the caller's identity.

The jury awarded $6,000 damages for emotional distress suffered as a result of these violations.

■ PSB argues that even if it violated the act, its actions were inadequate as a matter of law to justify an award of damages for emotional distress. Although the question may be a close one, we find that the evidence considered in the light most favorable to the Venes was sufficient to sustain the award.

The trial court instructed the jury that Venes had the burden of proving four elements to recover for emotional distress: 1. The conduct must be extreme and outrageous; 2. The conduct must be intentional or reckless; 3. The conduct must cause emotional distress; and 4. The distress must be severe. The instructions were based on the Restatement (Second) of Torts § 46 (1965) definition of intentional infliction of emotional distress. The Minnesota Supreme Court subsequently adopted that

definition when it recognized an independent tort of infliction of severe emotional distress in *Hubbard v. United Press International,* 330 N.W.2d 428 (Minn.1983).

As comment "e" to the Restatement notes:

The extreme and outrageous character [of conduct] may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other or power to affect his interests. In particular, \* \* collecting creditors have been held liable for extreme abuse of their position.

Courts have allowed recovery for emotional distress in a variety of debt collection cases. For example, *Turman v. Central Billing Bureau, Inc.,* 279 Or. 443, 568 P.2d 1382 (1977), held that the trial court properly denied the collection bureau's motion for a directed verdict. The evidence showed that a bureau agent called Turman, used profane and abusive language and threatened her with the loss of her home and her husband's job. As a result she suffered severe emotional distress and headaches which required her to be hospitalized. Under such circumstances, the Oregon Supreme Court concluded that the trial court could not find, as a matter of law, that Turman failed to offer sufficient evidence of extreme and outrageous conduct.

*Moorhead v. J.C. Penney Co.,* 555 S.W.2d 713 (Tenn.1977), reversed a judgment dismissing Moorheads' complaint for intentional infliction of severe emotional distress. Plaintiffs alleged that although they informed J.C. Penney of a billing error the company repeatedly made telephone calls and sent letters seeking to collect the nonexistent debt. The company threatened to sue, to damage the plaintiffs' credit reputation and to contact the employer of one of the plaintiffs. The court found Penney's actions to be extreme and outrageous, particularly in light of the fact the threatening conduct continued long after the company acknowledged that its accounts were in error.

*Barnett v. Collection Service Co.,* 214 Iowa 1303, 242 N.W. 25 (1932), upheld an award of damages for emotional distress in the absence of any physical ailment. Barnett owed $25.75 on a coal bill. She could not pay and her assets and wages were exempt. The collection service sent her a series of letters threatening to "tie her up tighter than a drum" and to appeal to her employer. The letters caused her mental anguish and pain.

In this case PSB made a series of calls to Venes. In one a PSB employee became abusive, called Robert a "deadbeat" and threatened him to "stay out of Minnesota if you know what's good for you and your family." PSB argues that the caller's conduct was at worst in bad taste. We disagree. It was a fact question for the jury whether PSB's conduct was simple bad taste or extreme and outrageous. The jury reasonably could have found it was extreme and outrageous, particularly in light of Robert's medical problems.

In addition, PSB sought to collect interest from Venes even though the Mayo Clinic, the assigning creditor, did not charge patients interest and did not authorize PSB to do so. PSB attempted to collect interest on Venes' account even after it received notice that the principal amount was paid in full.

There was evidence at trial that each year the Mayo Clinic assigned approximately 1,500 accounts averaging $1,000 each to PSB for collection. *The clinic has a published policy of not charging patients interest. It did not authorize PSB to charge interest on accounts assigned for collection.* PSB was aware of the Mayo Clinic policy on interest. PSB did not inform the clinic that it was charging interest. It did not pay the clinic any of the interest it collected. PSB has continued to charge interest on some clinic accounts despite a court ruling that it is entitled to no more than its assignor.

A creditor has a right to urge payment of a just debt and to resort to proper legal procedures to enforce such payment. In this case, the jury could find that PSB exceeded its legal rights and recklessly or intentionally inflicted severe emotional distress upon Robert Venes.

## II.

Second, PSB contends that the trial court erred in submitting attorney fees for the first action to the jury as an element of actual damages in this case. The company admits that the legal fees incurred in the first action were the result of its violation of the Fair Debt Collection Practices Act, but argues: (1) Venes waived the right to collect attorney fees by not seeking them in the prior action, and (2) there is no statutory authority for treating attorney fees as actual damages.

Under Rule 13, Minn.R.Civ.P., Venes could have raised PSB's violations of the Fair Debt Collection Practices Act in the initial action. But it would be contrary to the purpose of the act to penalize them for their failure to raise permissive counterclaims. Likewise, it would be contrary to the purpose of the act to hold as a matter of law that legitimate attorney fees can not be an element of actual damages.

■ The purpose of the act, as reflected in 15 U.S.C. § 1692, is to eliminate abusive debt collection practices, to protect consumers and redress their injuries. Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorney fees it may not be possible for them to pursue small claims. As Venes' attorney argued forcefully to the jury, unscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs. 15 U.S.C. § 1692k(a)(3). It would be unfair to deny Venes attorney fees simply because they were incurred in a prior action which established the violation rather than in the instant proceeding.

**676**

### III.

■ Third, PSB contends that the evidence is inadequate to support the award of $1,000 out-of-pocket expenses. The jury's award of out-of-pocket expenses was reasonable given Robert Venes' testimony that in connection with the first suit he traveled from Waukon, Iowa, to Rochester and incurred lodging and food expenses. We will not disturb it.

### IV.

■ Fourth, PSB contends that Venes' attorney's closing argument was improper and prejudicial. The company objects primarily to Venes' characterization of its collection of interest on clinic accounts. We find that Venes' closing argument was forceful and hard hitting, but within the bounds of zealous representation. PSB argued at trial that it deserved interest from Venes, despite the prior adjudication to the contrary. PSB also stressed that it intends to continue collecting it from some clinic patients. In such circumstances Venes' attorney reasonably could· be expected to mention PSB's interest collection practices.

### V.

■ Finally, PSB contends that the trial court erred by instructing the jury that "use of an alias constitutes failure to make meaningful disclosure of the caller's identity." We need not review this claim. Even if the trial court's instruction was in error, it was not ˙reversible error. There was adequate evidence to support a finding of harassment under either of the other two theories of harassment. The jury could reasonably find that the threat to stay out of Minnesota was a threat of use of violence. Likewise, they could find that the calls were intended to annoy or harass. *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864 (N.D.1981), found that immediately recalling a debtor after the debtor hung up can constitute harassment.

### DECISION

We affirm the verdict that PSB violated two provisions of the Fair Debt Collection Practices Act and affirm the award of damages for emotional distress, out-of-pocket expenses and attorney fees for the prior action establishing one of the violations.