891 P.2d 300

Donna FULLER and Patricia Agcopra, individually and on behalf of others similarly situated, Plaintiffs–Appellants,

v.

PACIFIC MEDICAL COLLECTIONS, INC.; Reliable Collection Agency, Ltd.; Jonathan Kirschner; and Joseph Leder; Defendants–Appellees; and John Does 1–10, Defendants.

Carmela G. BAQUI, Rosalino Agcopra, and Patricia Agcopra, individually and on behalf of others similarly situated, Plaintiffs–Appellants,

v.

RELIABLE COLLECTION AGENCY, LTD.; Jonathan Kirschner; and Joseph Leder; Defendants–Appellees; and John Does 1–10, Defendants.

Nos. 17743, 18338.

Intermediate Court of Appeals of Hawai'i.

March 22, 1995.

Norman K.K. Lau, on the briefs, Honolulu, for plaintiffs-appellants.

Robert E. Chapman and Patricia S. Zell (Stanton Clay Tom Chapman & Crumpton, of counsel), on the brief, Honolulu, for defendants-appellees.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

Opinion of the Court by ACOBA, Judge, with respect to Parts I, II and IV–VII; dissenting opinion with respect to Part III.

In this consolidated appeal, we have been asked to review the appropriateness of summary judgments[1] granted to the defendants-appellees collection agencies and employees (Defendants) against the individual plaintiffs-appellants (Plaintiffs) on allegations that Defendants' debt collection practices violated Hawai'i Revised Statutes (HRS) chapter 443B (Supp.1992), which regulates such agencies. We vacate the December 21, 1993 order granting summary judgment in Appeal No. 17743 (*Fuller*). As to Counts II through IV of the complaint in Appeal No. 18338 (*Baqui*), we vacate the amended order granting summary judgment. As to Count I of the complaint in *Baqui*, the majority of this court vacates the amended order granting summary judgment in favor of Defendants but I would affirm for the reasons set forth in Part III. Consequently, we vacate the March 11, 1994 amended order granting summary judgment in Appeal No. 18338 (*Baqui*) as to all counts. Finally, we remand the cases for further proceedings.

The complaints allege that Defendants obtained judgments against Plaintiffs in the district court following assignments to defendant agencies of debts owed by Plaintiffs to health care providers. After the district court judgments were filed, Plaintiffs brought the underlying complaints in the circuit court alleging Defendants' violation of chapter 443B.

In *Fuller*, Plaintiffs–Appellants Donna Fuller and Patricia Agcopra (collectively, Fuller) filed suit on April 30, 1993, against Defendants–Appellees Pacific Medical Collections, Inc. (Pacific), Reliable Collection Agency, Ltd. (Reliable), Jonathan Kirschner (Kirschner), and Joseph Leder (Leder) on behalf of themselves and others. Defendants filed an answer on May 24, 1993, and an amended answer on June 4, 1993. Discovery had been commenced by Fuller. Before all discovery was completed, Defendants moved on July 23, 1993 to dismiss the complaint.[2] The motion to dismiss was supplemented by affidavits and exhibits, and therefore, treated as a motion for summary judgment under Hawai'i

---

1. Because the defendants supplemented their motions to dismiss with affidavits and exhibits, we refer to the motions as summary judgment motions and the resulting orders as summary judgment orders where appropriate, see *infra*.

2. The record on appeal does not contain any transcripts from the hearings of the motions.

The plaintiffs filed "Certification[s] of Transcripts Non–Designation" pursuant to Hawai'i Rules of Appellate Procedure Rule 10(b)(1). The minutes do not indicate that any evidence was presented during the hearings. The transcripts of the hearings, therefore, are not necessary for determination of the issues on appeal.

Rules of Civil Procedure (HRCP) Rule 56(c). HRCP Rule 12(b) and (c).[3] *Accord Baehr v. Lewin,* 74 Haw. 530, 546, 852 P.2d 44, 53 (1993). On November 30, 1993, the circuit court granted the motion, and the order granting the motion was filed on December 21, 1993. The order stated that "Plaintiffs have no standing." Fuller filed their notice of appeal on January 18, 1994.[4]

While *Fuller* was pending on appeal, Plaintiffs moved to consolidate *Baqui* and *Fuller,* with the apparent concurrence of Defendants. In the consolidation motion, counsel agreed that the briefs filed in *Fuller* would "serve as the briefs" in *Baqui.* This court granted the motion to consolidate appeals on December 5, 1994.

In *Baqui,* Plaintiffs–Appellants Carmela G. Baqui, Rosalino Agcopra, and Patricia Agcopra (collectively Baqui) filed suit against Reliable, Kirschner, and Leder. The complaints in *Fuller* and *Baqui* set forth the same claims and prayers for relief. Defendants filed their answer on May 24, 1993 and their amended answer on June 4, 1993. In their answers, Defendants in *Fuller* and *Baqui* set forth the same defenses except that in *Baqui,* Defendants also included the defenses of "unauthorized transfer of accounts, misappropriation, conversion and extortion."[5] Discovery had been commenced by Baqui. Before all discovery was completed, Defendants moved on July 23, 1993 to dismiss the complaint. The motion to dismiss was supplemented by affidavits and exhibits, and therefore, treated as a motion for summary judgment under HRCP Rule 56(c). HRCP Rule 12(b) and (c). On November 30, 1993, the circuit court granted the motion to dismiss and the order was filed on December 27, 1993.

As in *Fuller,* the *Baqui* order stated that "Plaintiffs have no standing." On January 6, 1994, Baqui filed a motion for reconsideration. The court denied that motion on March 11, 1994, but directed that an amended dismissal order be filed. The amended order filed on March 11, 1994, deleted the predicate of "Plaintiffs have no standing." Baqui filed their first notice of appeal on April 7, 1994. This appeal was dismissed as premature because a final judgment had not been filed. Judgment was eventually filed on July 22, 1994. The second and effective notice of appeal was filed on August 15, 1994.

As a preliminary matter, the parties indicate that the *Fuller* defendants were granted leave by the Hawai‘i Supreme Court to file, in the circuit court, a motion to delete the words "because Plaintiffs have no standing" from the order granting the dismissal motion. However, the record on appeal reveals that no motion is pending before the circuit court. Defendants point out that a similar order was amended in *Baqui* pursuant to their motion. But, in the absence of any amendment of the record, the "Plaintiffs have no standing" order is the pertinent order for purposes of the *Fuller* appeal.

## I.

### STANDING

■ In *Fuller,* the circuit court granted the motion to dismiss via a minute order on the ground that "PLAINTIFFS HAVE NO STANDING" because the "DCCA [ (director of commerce and consumer affairs) (director) ] IS THE AGENCY TO ENFORCE LAWS." The written order filed on December 21, 1993, states that "the Complaint filed April 30, 1993 is hereby dismissed with prej-

---

**3.** Hawai‘i Rules of Civil Procedure (HRCP) Rule 12(b) provides:

> If, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**4.** No judgment was filed in this case. While a judgment is required under HRCP Rule 58, the Hawai‘i Supreme Court has held that "[w]e will not rigidly apply the Rule 58 requirement of a separate judgment" to appeals filed prior to March 31, 1994. *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai‘i 115, 119, 869 P.2d 1334, 1338 (1994).

**5.** There is nothing in the record that would indicate how these defenses would be relevant, and as these defenses are only raised in one case, they would appear to have been included by mistake.

udice because [Fuller have] no standing." As indicated *supra*, the order, on the present state of the record, reflects that dismissal was based on Plaintiffs' lack of standing.

In *Baqui*, as also indicated *supra*, the same circuit court initially rendered the same order but on March 11, 1994, the court ruled that the order be amended by "deleting the phrase 'because Plaintiffs have no standing', because the basis for granting said Motion was all of the arguments in Defendants' Motion and not limited to any single argument."

While HRS § 443B–2 (Supp.1992) does delegate enforcement of the chapter to the director, enforcement may also be had through HRS chapter 480 (1985 and Supp. 1992). HRS § 443B–20 (Supp.1992) states that, "A violation of this chapter by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480–2." HRS § 480–2(d) (Supp.1992), in turn, permits suit on any unfair and deceptive trade practice to be brought by a "consumer." HRS § 480–13(b) allows "[a]ny consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2" to sue for damages. The complaints, thus, pray for relief under HRS § 480–13(b) (Supp.1992) based on violations of HRS chapter 443B.

A " '[c]onsumer' means a natural person who, primarily for personal, family, or household purposes, purchases ... services...." HRS § 480–1 (Supp.1992). To the extent, therefore, that Fuller and Baqui are "consumers," they would be permitted to sue under chapter 480. *Cf. Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 612, 607 P.2d 1304, 1308 (1980) (plain reading of HRS § 480–13(a) (1985) which allowed "any person" to sue for a violation of HRS chapter 480 is binding even though there are sections in that chapter which delegate enforcement of an HRS § 480–2 violation to the attorney general and director of the office of consumer protection).

As a result, designation of the director to enforce chapter 443B does not preclude standing to an individual to sue under chapter 480, provided he or she can satisfy the definition of "consumer." The circuit court's conclusion that Plaintiffs had no standing to sue for a chapter 443B violation because the director was charged with enforcement of that chapter, then, was error.

That being so, the order granting the motion to dismiss in *Fuller* is vacated. To the extent that the order granting the motion to dismiss in *Baqui* rested on the same premise, it was erroneous.

Because *Fuller* is remanded, the same issues decided in *Baqui* will be left for disposition in *Fuller*. For that reason, we include *Fuller* in our following discussion of the other arguments raised by Defendants in *Baqui*.

## II.

## COLLATERAL ESTOPPEL/*RES JUDICATA*

### A.

Defendants maintain that Plaintiffs are "precluded from relitigating the total amount of the Judgments" by the doctrine of collateral estoppel and/or *res judicata*. They argue that "[t]he amounts of the attorneys' fees, costs, and expenses were never questioned by ... Plaintiff[s] after the Judgments were filed in their respective cases[.]" In addition, they claim that the counts alleging fraud and negligence are also barred by the same doctrines.

On the other hand, Plaintiffs contend that the doctrines do not apply because none of the issues "were litigated or could have been litigated when the judgment was issued." Further, they assert that the issues "arose after the judgment was entered."

We hold that collateral estoppel does bar the relitigation of the amounts owed as set forth in the district court judgments.

The doctrine of collateral estoppel ... "precludes the relitigation of a fact or issue which was previously determined in a prior suit in a different claim between the same parties or their privies[, or] ... [the] relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who

was a party in that suit and who himself raised and litigated the fact or issue."

*In re Dowsett Trust,* 7 Haw.App. 640, 644–45, 791 P.2d 398, 401–02 (1990) (quoting *Ellis v. Crockett,* 51 Haw. 45, 55–56, 451 P.2d 814, 822 (1969) (citations omitted)).

█ The amount of unpaid principal balance on the debts owed by Plaintiffs, and the related interest, costs and attorney fees were incorporated into the judgments and, hence, "previously determined" in the district court suits. Plaintiffs argue that interest and attorney fees could not have been litigated because these items are calculated when the judgment is sent to the judge for signature and not when the parties appear in court. This argument is unavailing where, as here, Plaintiffs either failed to contest or confessed to the district court complaints. Additionally, the district court rules do provide the means for setting aside default, District Court Rules of Civil Procedure (DCRCP) Rule 55(c); or correcting an award of interest, costs and attorney fees, DCRCP Rules 59 and 60. Moreover, Plaintiffs failed to but could have appealed the judgments against them.

In this case, four judgments were rendered against Plaintiffs. In *Fuller,* a judgment by confession was entered against Patricia Agcopra and Rosalino Agcopra jointly, and a judgment by default was entered against Donna Fuller. In *Baqui,* a judgment by confession was entered against Carmela Baqui, and a judgment by default was entered against Patricia Agcopra and Rosalino Agcopra jointly.

█ Plaintiffs contend that the judgments by default against Donna Fuller, and Patricia Agcopra and Rosalino Agcopra exempt them from the application of collateral estoppel. However, a default judgment is a final judgment to which collateral estoppel applies, *Medeiros v. First Ins. Co.,* 50 Haw. 401, 403, 441 P.2d 341, 344 (1968), unless the default judgment is void. *Cf. Matsushima v. Rego,* 67 Haw. 556, 560, 696 P.2d 843, 846 (1985) (*res judicata* does not apply to void default judgments). There is no evidence that the district court judgments are void.

█ The judgments by confession of Patricia Agcopra and Rosalino Agcopra and Carmela Baqui should be treated no differently. A judgment by confession is a "declaration which the party ... makes in a judicial proceeding" and "is substantially an acknowledgment that the debt is justly due." 46 Am.Jur.2d *Judgments* § 228, at 555, 556 (1994). Accordingly, there is no reason why collateral estoppel should not apply to a judgment by confession as it does to a judgment by default. Hence, the doctrine of collateral estoppel would apply to bar relitigation of the amounts listed as owing on all four district court judgments.

Plaintiffs do refer us to *Venes v. Professional Serv. Bureau, Inc.,* 353 N.W.2d 671 (Minn.Ct.App.1984). In *Venes,* the defendant collection agency had obtained a default judgment against the plaintiffs that included an award of interest. The plaintiffs successfully reopened the case and obtained an order dismissing the interest award because the defendants' assignor had a policy of not charging interest. In the plaintiffs' subsequent suit for violation of the Fair Debt Collection Practices Act, the defendants argued that the plaintiffs could not seek recovery of the attorney fees incurred in reopening the prior case because that claim should have been raised in the prior suit. The court, however, held that the plaintiffs were not precluded from raising the claim because it would have constituted a permissive counterclaim in the initial action. Unlike Plaintiffs here, the *Venes* plaintiffs did move, and successfully so, to set aside a default judgment. Their subsequent claim for attorneys fees stemmed from dismissal of a part of the judgment. That situation is not presented here because Plaintiffs did nothing to contest the finality of the district court judgments. Moreover, in light of our discussion, *infra,* it is unnecessary to determine whether *Venes* should be treated as persuasive authority for this jurisdiction.

### B.

In this case, Plaintiffs' prayers are for an injunction against Defendants' practices pursuant to chapter 443B, damages under chapter 480, and accompanying punitive damages.

We turn then to the question of whether *res judicata* bars Plaintiffs' complaints.

Plaintiffs, here, actually seek enforcement of chapter 443B through chapter 480. In that regard, HRS § 480–21 (1985) states, "Any action or proceeding, whether civil or criminal, authorized by this chapter shall be brought in the circuit court...." Consequently, the district court had no jurisdiction to hear any action brought pursuant to chapter 480. It follows that any chapter 480 claim grounded on a chapter 443B violation could not have been raised in the district court proceedings.

■ Under the doctrine of *res judicata*, " '[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the [claims that] were actually litigated in the first action, but also of all grounds of claim [and defense that] might have been properly litigated in the first action but were not litigated or decided.' " *State v. Magoon,* 75 Haw. 164, 190, 858 P.2d 712, 725, *reconsideration denied,* 75 Haw. 580, 861 P.2d 735 (1993) (quoting *Pele Defense Fund v. Paty,* 73 Haw. 578, 599, 837 P.2d 1247, 1261 (1992, *cert. denied,* — U.S. —, 113 S.Ct. 1277, 122 L.Ed.2d 671)) (quoting *Morneau v. Stark Enters., Ltd.,* 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975) (citations omitted))).

■ Plaintiffs' chapter 480 claims which were derived through chapter 443B could not have been "properly litigated" in the district court for the court lacked jurisdiction. Thus, such claims are not precluded by the doctrine of *res judicata.*

■ Also, generally, the district court not having equity jurisdiction it does not have jurisdiction to order injunctive relief in civil cases. *See* HRS 603–21.7(a)(3) 1985; HRS chapter 604 (1985, Supp.1992, Comp.1993, and Supp.1994). *See also* District Court

Rules of Civil Procedure Rule 65 (reserved). *Compare* HRS § 604–10.5 (Supp.1992 and Comp.1993) (district court has the power to enjoin harassment). Neither would punitive damages be appropriately sought in the district court, since such damages are either parasitic of chapter 443B claims or of chapter 480 claims; if in fact such damages are allowable under chapter 480. *See Calleon v. Miyagi,* 76 Hawai'i 310, 876 P.2d 1278 (1994) (damage awards under chapter 480 not intended to be punitive).

### III.

### COUNT I

The majority of the court vacates the circuit court's order granting Defendant's motion to dismiss. For the reasons set out in this portion of the opinion, I believe that the order as to this count should be affirmed.

Count I of the complaints alleges that "Defendants have violated [HRS § 443B–9] by not paying all of the attorney's fees or commissions collected [on the judgment] to their attorney." Opposing this claim, Defendants reasoned that Plaintiffs have no standing to complain because they would not be affected by any such violation.

Specifically, Plaintiffs' position is that they "should ... only [pay] 25% of the actual attorney's fees assessed [by the judgment] because Defendants' contract with Mr. [Jack] Gonzales [ (Gonzales) (Defendants' attorney) ] was only for 25% of the fees/commission collected." [6] Plaintiffs rely on HRS § 443B–9 (Supp.1992). It requires that all attorney's fees collected "shall be remitted to the attorney and no portion of the collection shall be retained by the collection agency."

But HRS § 443B–9 does not establish how the amount of attorney's fees is to be determined.[7] HRS § 443B–9 requires that what

---

6. Of course, the plaintiffs did have the opportunity at the district court to challenge the reasonableness of the attorney fees if they believed the fees were unreasonable but failed to do so. *Pele Defense Fund v. Paty,* 73 Haw. 578, 600, 837 P.2d 1247, 1261 (1992), — U.S. —, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993) (plaintiff had "a full and fair opportunity to litigate the relevant issues" and so was precluded by collateral estoppel from raising the issues again).

7. Hawai'i Revised Statutes (HRS) § 443B–9 (Supp.1992) states:

 [§ 443B–9 Collection, attorney's, or commission fees.] A collection agency shall not collect, or attempt to collect, any collection fee or attorney's fee or commission from any debtor; provided that an attorney's fee or commission may be collected after filing of a suit against any debtor and the fee or commission shall not

is actually *collected* by way of attorney's fees be remitted to the attorney; it does not prohibit the assessment of what is permitted under the attorneys' fees statute.[8] The reason for this distinction becomes clear from the legislative history of HRS § 443B–9 which is discussed *infra*. The agencies' failure to remit all attorney's fees collected to its attorney may violate HRS § 443B–9 and thus constitute an unfair or deceptive trade practice under HRS chapter 480. While it may be pursued by the director, the violation does not affect Plaintiffs in any way.

HRS § 443B–9 sets forth the maximum amount of attorney's fees a collection agency may assess a debtor. Under that section, fees cannot exceed 25% of the unpaid principal balance owed by the debtors at the time of suit. If the attorney's fees charged against the debtors do not exceed the allowable 25%, and Plaintiffs do not claim that the fees do, the debtors do not suffer any injury from noncompliance with the remission provision. On its face, the remission provision only affects attorneys because it mandates that the "fees ... collected ... shall be remitted to the attorney[.]"

HRS § 480–13(b) allows suit by "[a]ny consumer who is *injured* by any unfair or deceptive act or practice...." (Emphasis added.) Because there can be no injury to Plaintiffs by the collection agency's failure to remit all attorney's fees collected on the judgment to its own attorney, the requirement that there be such injury under HRS § 480–13(b) is not satisfied. *See Wiginton v. Pacific Credit Corp.*, 2 Haw.App. 435, 444, 634 P.2d 111, 118 (1981) (injury exists if "expenses were incurred because of the statutory violation and not because of a valid debt") (decided under HRS § 480–13 (Supp.1975)). Consequently, Plaintiffs have failed to establish the presence of any injury resulting from this alleged violation.

This is consistent with the legislative intent behind HRS § 443B–9. In 1987, the legislature enacted chapter 443B to provide "general regulation of collection practices[,]" to "protect creditors from unscrupulous or dishonest collection agencies, and to protect debtors from abusive collection agencies[.]" Hse.Stand.Comm.Rep. No. 541, in 1987 House Journal, at 1355. Provisions like 443B–9 involve the general regulation of collection agencies and are enforceable by the

---

be in excess of twenty-five per cent of the unpaid principal balance. All attorney's fees or commissions collected by a collection agency shall be remitted to the attorney and no portion of the collection shall be retained by the collection agency.

**8.** HRS § 607–14 (1985) (amended Comp.1993) and HRS § 607–17 (1985) (repealed 1993) which were in effect at the time the instant judgments were filed allowed reasonable attorneys' fees to be assessed within certain limits. The statutes provided as follows in pertinent part:

*§ 607–14 Attorneys' fees in actions in the nature of assumpsit.* In all the courts, in all actions in the nature of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees otherwise taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:

25 per cent on first $1,000 or fraction thereof.

20 per cent on second $1,000 or fraction thereof.

....

The above fees shall be assessed on the amount of the judgment exclusive of costs and all attorney's fees obtained by the plaintiff....

*§ 607–17 Attorney's fees when provided for in promissory notes, etc.* Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to the successful party, whether plaintiff or defendant:

(1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;

(2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed;

provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.

The current HRS § 607–14 (Comp.1993) provides for attorney's fees for actions in the nature of assumpsit and as allowed by contracts. It requires the attorney to submit an affidavit and limits the fee to 25% of the judgment or to the rate, not exceeding 25%, specified by the contract which was the subject of the suit.

director, *see infra*, note 9. It and a provision requiring that suit brought for unpaid debts be filed by an attorney were both initially enacted in 1969. 1969 Haw.Sess.L.Act 273, § 2 at 499. These two provisions were adopted because the collection agencies' practice of preparing "a complaint ... under supervision of an attorney, signed by him, and filed in the name of the agency as plaintiff-assignee" "could be construed as an unauthorized practice of law." Sen. Stand.Comm.Rep. No. 854, in 1969 Senate Journal, at 1169. *See generally Reliable Collection Agency v. Cole*, 59 Haw. 503, 584 P.2d 107 (1978). The legislation was intended to "remove the cloud on the described activities of the collection agencies[.]" Sen. Stand.Comm.Rep. No. 854, in 1969 Senate Journal, at 1169. The purpose of requiring that attorney's fees collected be remitted to the attorney rather than retained by the agency, then, was to prevent agencies from acting in the place of attorneys. No other purpose can be reasonably attributed to the section in light of the legislative objective. Accordingly, HRS § 443B–9 is one of those sections in chapter 443B concerned with the general regulation of collection agencies, and not as Plaintiffs would urge, a section such as HRS §§ 443B–15 to –19, which has to do with prohibited acts involving debtors.[9]

Therefore, the order granting the motion to dismiss with respect to Count I should be affirmed.

This holding would moot Plaintiffs' argument that the court should have allowed the depositions of Gonzales and Leder to be completed before the issuance of the dismissal

order. Because the failure to remit all collected attorney's fees to its attorney would not cause Plaintiffs injury, the deposition testimonies of Gonzales and Leder concerning the fee arrangements between Gonzales and the collection agencies would not be relevant.

In connection with chapter 480 claims, it is noted that the complaints are styled as suits "on behalf of others similarly situated," but as Defendants point out, Plaintiffs' counsel has failed to certify the cases as class actions. While qualification as a class is a matter to be determined by the circuit court, it is necessary to mention that HRS § 480–13(c) allows remedies under HRS § 480–13(b) to be extended to "class action and de facto class action lawsuits or proceedings[.]" A de facto class action, according to HRS § 480–1, "means an action that has not been certified by the court but includes identical considerations as provided in Hawaii [Hawai'i] rules of civil procedure rule 23[.]"

## IV.

### COUNTS II and III

Plaintiffs indicate that Counts II and III [10] of the complaints "deal with [Defendants'] practice of adding interest to debts assigned to [Defendants] by clients[.]" Thus, Plaintiffs allege in Count II that Defendants violated HRS § 443B–18(5) and (8) (Supp.1992) because resulting false representations were made of the actual amounts owed and legally authorized under Plaintiffs' contracts with the assignee health care providers. Further, in Count III Plaintiffs allege that Defendants violated HRS § 443B–19(3) and (4) (Supp.

---

9. This conclusion is also supported by the organizational structure of the chapter. Chapter 443B (Supp.1992) is organized as follows: (1) definitions (HRS § 443B–1), (2) declaration of the powers and duties of the director of commerce and consumer affairs (HRS § 443B–2), (3) provisions relating to requirements for operating a collection agency (HRS §§ 443B–3 to –6), (4) provisions relating to agency clients (creditors) and HRS § 443B–9 (HRS §§ 443B–8 to –11), (5) provisions relating to criminal prosecution and other remedies (HRS §§ 443B–12 to –14), (6) provisions setting forth prohibited acts against debtors (HRS §§ 443B–15 to –19), and (7) the provision that any violation of the chapter is an unfair method of competition and an unfair or deceptive act (HRS § 443B–20).

10. In the complaints, Counts II and III state:

*Count Two*

26. By their actions, Defendants have violated [HRS § 443B–18(5) and (8)] because the amounts of the claim allegedly owed both before and after payments are made are false representations of the actual amounts owed and are not legally authorized.

*Count Three*

27. By their actions, Defendants have violated [HRS § 443B–19(3) and (4)] by attempting to collect and/or collecting collection agency's fees and/or interest not authorized by the agreement creating the obligation or by law.

1992) by collecting fees and/or interest not authorized by the service agreements, i.e. contracts, or by law.

The material facts underlying these issues are in Plaintiffs' contracts with the health care providers. Plaintiffs' obligation to pay interest prior to and after judgment, and the attorney's fees and costs required to be paid must be decided by resort to the contract terms.

## A.

### *Fuller*

A copy of the purported contracts entitled "St. Francis Medical Center, Honolulu, Hawaii [Hawai'i]—CONDITIONS OF ADMISSIONS" and "CONDITIONS OF ADMISSIONS—Pali Momi Medical Center" were attached as exhibits to the motion to dismiss and labeled as Exhibits G and H, respectively. There are no references to any Exhibit G or H in any supporting affidavit. However, Kirschner's affidavit refers to the "Conditions of Admissions" as Exhibits D and F to his affidavit.

With respect to the exhibits, Kirschner's affidavit declares, in relevant part:

1. I am an officer and an employee/manager of [Pacific]. . . .

2. I have personal knowledge of the matters to which I testify herein and am competent to do so.

. . . .

12. Exhibit "D" is a true copy of the "Conditions of Admission" which [Pacific] received from St. Francis Medical Center which was signed by Donna Fuller and dated January 28, 1989.

. . . .

15. Exhibit "F" is a true copy of the "Conditions of Admission" to Pali Momi Medical Center, signed by Rosalino Agcopra, and dated September 6, 1989, which [Pacific] received from Pali Momi.

## B.

### *Baqui*

The memorandum in support of the motion to dismiss filed on July 23, 1993 stated that the contracts or "conditions of admissions," designated as Exhibits G and H would be provided "as soon as they are subpoenaed."

In a supplemental affidavit filed on August 2, 1993, Patricia S. Zell (Zell), an attorney for Reliable, Kirschner, and Leder, averred that the document attached to her affidavit was Exhibit H, the "'Conditions of Admission', dated September 29, 1987, [and] was produced pursuant to a records deposition in this matter[.]" Two documents were attached to the affidavit. The first was the title page of a deposition transcript taken on July 26, 1993, of Kathryn Cabacungan (Cabacungan) of the Kapiolani Medical Center for Women and Children (Kapiolani). The second was a "conditions of admission" for Kapiolani signed "Carmela G. Baqui." Although the record contains a Notice of Taking Deposition Upon Written Questions on July 26, 1993, for the medical records custodian of Kapiolani, the transcript relating to the document is not in the record. Therefore, nothing establishes Cabacungan as the custodian of records or a person qualified to authenticate the document given to Zell.

In a second supplemental affidavit filed on August 10, 1993, Zell stated that the document referred to in her previous affidavit was actually Exhibit G to the motion and that it was "a true copy of the document produced to Defendants pursuant to a records deposition[.]" Again, this affidavit did not specify from whom the document was received, nor is a copy of the records deposition a part of the record. A copy of Exhibit G was attached to the affidavit and consisted of a copy of the "conditions of admission" signed by "Carmela G. Baqui."

In a supplemental affidavit of August 10, 1993, Kirschner stated that he received a copy of the "Conditions of Admission" for Patricia Agcopra's hospital admission to Queen's Medical Center from the Emergency Group. This document was labeled Exhibit H to the motion to dismiss.

## C.

None of the exhibits purporting to be the contracts between Plaintiffs and the health care providers was supported by any

appropriate affidavit or certification. The HRCP require that exhibits attached to a motion for summary judgment must be supported by an appropriate affidavit or certification.

HRCP Rule 56(e) [11] provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." The "papers" must be admissible in evidence.

The contracts are at the heart of the controversy in Counts II and III. Yet, the movants failed to authenticate them or to have them sworn to by the proper person as the necessary prerequisite to admissibility and consideration by the circuit court. The decisions are legion which hold that this elementary, but fundamental requirement must be satisfied before an appellate court will consider documents presented for summary judgment. The Hawaiʻi Supreme Court has said:

> [Rule 56] requires that facts set forth in the affidavits be admissible in evidence. All papers referred to in the affidavits must also be attached and sworn to or certified. These requirements are mandatory. As we pointed out in *Cane City Builders v. City Bank*, 50 Haw. 472, 443 P.2d 145 (1968) mere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified.

*Pacific Concrete Fed. Credit Union v. Kauanoe*, 62 Haw. 334, 336–37, 614 P.2d 936, 938 (1980). "[D]ocuments referred to in a motion for summary judgment must be sworn or certified and attached to the affidavit if they are to be considered by the court." *Cane*, 50 Haw. at 474, 443 P.2d at 147. *Accord Matter of Hawaiian Flour Mills, Inc.*, 76 Hawaiʻi 1, 11, 868 P.2d 419, 429 (1994); *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396–97 n. 2, 772 P.2d 1187, 1190 n. 2 (1989); *Munoz v. Yuen*, 66 Haw. 603, 606, 670 P.2d 825, 827 (1983) (per curiam); *State v. United States*, 64 Haw. 573, 575, 645 P.2d 311, 313–14 (1982); *Waikiki Resort Hotel v. City & County of Honolulu*, 63 Haw. 222, 238, 624 P.2d 1353, 1365 (1981); *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975); *Waimea Falls Park, Inc. v. Brown*, 6 Haw.App. 83, 92–93, 712 P.2d 1136, 1142–43 (1985); *Hawaii Leasing v. Klein*, 4 Haw. App. 1, 7 n. 5, 658 P.2d 343, 347 n. 5 (1983); *Munds v. First Ins. Co. of Hawaii, Ltd.*, 1 Haw.App. 104, 105, 614 P.2d 408, 410 (1980).

Obviously, the burden of ensuring that matters presented in support of the motion are admissible initially lies with counsel seeking the order. Nevertheless, as a matter of good judicial administration, the circuit courts should ascertain whether a foundation has been established for the admissibility of evidence offered in support of the motion before an order granting summary judgment is filed. Plainly, in the absence of self-authentication, the mere fact that counsel received the documents from a non-party in response to a request does not establish the authenticity of the documents. Nor does the averment that the documents were received from a "records deposition" without more, suffice. Accordingly, the documents here were not admissible in evidence and may not be considered.

Without the exhibits, there remains a question of fact as to whether or not the amount of interest, costs and attorney fees imposed violated HRS § 443B–18 and HRS § 443B–19. Therefore, the motions should not have been granted as to Counts II and III. *Sentinel Ins. Co. v. First Ins. Co.*, 76 Hawaiʻi 277, 287, 875 P.2d 894, 904 (1994)

---

11. HRCP Rule 56(e) provides:

*(e) Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be entered against him [or her].

(summary judgment is proper only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law).

## V.

### COUNTS IV—VI

Defendants' contention that Counts IV—VI [12] should be dismissed assumes that the dismissal of Counts I—III was proper. Counts IV—VI rely upon the existence of wrongdoing under Counts I—III. Count IV simply alleges that by their actions previously described, Defendants violated HRS § 480–2. Count V alleges that Defendants defrauded Plaintiffs into paying more than required by their contracts with the health care providers or allowable under the law, a proposition equivalent to the allegations under Counts II and III. Count VI alleges gross negligence in engaging in illegal collection practices, the subject matter of the complaint.

Since Counts II and III should not have been dismissed, Counts IV—VI should, likewise, not have been dismissed.

## VI.

### LIABILITY OF INDIVIDUAL DEFENDANTS

Defendants submit, further, that because Kirschner and Leder were employees of defendant collection agencies and acted within the scope of their employment "the complaint[s] [were] properly dismissed as to their individual capacities." Plaintiffs, on the other hand, assert that Defendants' "judicial admissions ... render these Defendants individually liable because [their acts] were done on behalf of the corporation and Defendants have judicially admitted to [the] same."

Chapter 443B does not exclude any individuals or employees from liability under the chapter. Indeed, the chapter sets out a fine for a violation of the chapter "by an individual." HRS § 443B–14(a) (Supp.1992). In addition, "[a]ny officer, agent, or employee of a collection agency who personally participates in any violation of [chapter 443B] by the collection agency" is subject to the same fine. HRS § 443B–14(b) (Supp.1992). Accordingly, the chapter applies to any individual employee who participates with the collection agency in violating the statute.

While nothing in chapter 443B prohibits the imposition of civil liability on individuals or agency officers, agents, or employees who violate its provisions, the avenue for private enforcement of its prohibitions as we have related, is the designation of such violations as unfair or deceptive practices under HRS § 480–2.

Under HRS § 480–2, corporate directors, officers, or agents may be held personally liable under the "civil" liability provisions of chapter 480 if they participate in a corporation's violation of that section. *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw.App. 125, 135–36, 712 P.2d 1148, 1155 (1985). In *Eastern Star,* we also adopted reasoning which extended individual liability to a corporate employee acting within the scope of his or her employment. *Id.* at 136, 712 P.2d at 1156.

Furthermore, it is well established that officers, directors, or shareholders of a corporation may be personally liable for the tortious conduct of the corporation, if they actively or passively participate in such wrongful conduct. *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 526, 543 P.2d 1356, 1360 (1975). *Accord Eastern Star,* 6 Haw.App. at 134, 712 P.2d at 1155 (HRS § 480–17 (1985) does not limit an employee's

---

**12.** In the complaints, Counts IV—VI state:
*Count Four*
 26. By their actions, Defendants have violated [HRS § 480–2].
*Count Five*
 27. With knowledge of their illegal collection activities, Defendants have defrauded Plaintiffs and members of their class into pay-

ing more than is required by the original agreement or allowed by law.
*Count Six*
 28. Defendants knew or should have known that their collection activities were illegal and were grossly negligent in continuing with their illegal collection activities.

individual liability under HRS chapter 480 only to criminal liability).

In his *Fuller* affidavit, Kirschner states that he is "an officer and an employee/manager of Pacific" and he "functioned as an employee/manager on behalf of [Pacific] in collecting the owed monies which had been assigned to [Pacific]." In his *Baqui* affidavit, Kirschner acknowledges that Reliable is a corporation in which he is an officer, shareholder, and employee and that during the relevant times he acted as an employee and manager "in collecting the owed monies which had been assigned to Reliable." Leder declares in his affidavits that he is the chairman of the board of Reliable and an employee of Reliable.

It follows, then, that acting within the course and scope of their corporate duties would not necessarily shield Kirschner and Leder from liability. Liability of the individual defendants, if any, rests on a determination of the remanded counts and the individual defendants' involvement, if any, in prohibited conduct.

## VII.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Even though they failed to move for summary judgment in the circuit court, Plaintiffs assert that they are entitled to summary judgment on appeal. *Flint v. MacKenzie,* 53 Haw. 672, 501 P.2d 357 (1972) (per curiam) (relying in part on a repealed elections statute, the court held that an appellate court may enter summary judgment for the nonmoving party). *See First Ins. Co. v. State,* 66 Haw. 413, 423, 665 P.2d 648, 655 (1983) (on appeal the supreme court entered summary judgment in favor of nonmoving party); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2720, at 35 (2d ed. 1983) ("an entry of judgment for the nonmoving party may be proper if there is no procedural prejudice to the moving party").

Plaintiffs seek summary judgment on two propositions: (1) Defendants assessed attorneys fees in violation of HRS § 443B-9, (2) Defendants unlawfully charged post-judgment interest on pre-judgment interest awarded in the judgments. *Larsen v. Pacesetter Sys., Inc.,* 74 Haw. 1, 48, 837 P.2d 1273, 1296 (1992) (the imposition of post-judgment interest of 10% on pre-judgment interest "contravene[s] the express terms of [HRS] § 478-3").

■ In connection with the first proposition, Plaintiffs maintain that Defendants "calculated [the attorney fees] on the total of the principal balance and prejudgment interest as well[,]" in violation of HRS § 443B-9's stricture against fees exceeding 25% of the unpaid principal balance. But, HRS § 443B-9 only directs that "the fee or commission shall not be in excess of twenty-five per cent of the unpaid principal balance" and the fees here were not. Indeed, a cursory examination of the judgments involved indicates that the attorneys' fees reflected on the judgments were far less than 25% of the principal "amount claimed by [P]laintiffs" exclusive of any awards of interest.[13] We find no reason, therefore, to grant summary judgment on this proposition.

Plaintiffs' second proposition presents a closer question, however. Plaintiffs overstate Defendants' answering brief by arguing that in it, "Defendants ... [admit they] add[ed] 10% prejudgment interest to the total judgments obtained against [P]laintiffs[.]" In fact, Defendants' answering brief only states that "[a]ny post judgment interest [imposed] was allowed by statute."

Yet, there is evidence in the deposition excerpts supporting Plaintiffs' position. In *Fuller,* Marilyn Corpuz Ramos, a bookkeeper, testified that she thought 10% post-judgment interest was added to Patricia and Rosalino Agcopra's total judgment.

13. In *Baqui,* the judgment against Carmela Baqui assessed $183.39 in attorney fees on a principal balance of $1515.00 (12%). The judgment against Patricia and Rosalino Agcopra assessed $14.33 in attorney fees on a principal balance of $114.66 (13%).

In *Fuller,* the judgment against Donna Fuller assessed $357.13 in attorney fees on a principal balance of $4,143.31 (9%). The judgment against Patricia and Rosalino Agcopra assessed $83.88 in attorney fees on a principal balance of $638.53 (13%).

Q. Plaintiffs' No. 22 is a judgment against Patricia and Rosalino Agcopra in the amount of $809.95. Does the computer then add 10 percent interest to the total judgment, $809.95?

A. I think so.

In that case, Kirschner also verified that the computer added 10% post judgment interest on the total judgment amount for Donna Fuller and the Agcopras. In his deposition, Kirschner stated:

Q. Plaintiff's Exhibit No. 10 is the judgment against Donna Fuller in the amount of $4,668.33; correct?

A. Correct.

Q. Is it a policy of [Pacific] to add 10 percent judgment interest on the total amount of $4,668.33?

A. I don't know if it was judgment by the Courts, so I don't know whether—I don't know enough about the figures to answer that question.

Q. You operate the computers at [Pacific]?

A. Correct.

Q. If the judgment came in in this amount, would you input a certain percentage of interest on that particular judgment in the computer?

A. No.

Q. Who would?

A. Liz Leder.

Q. And what would that interest amount be?

A. Court awarded interest.

Q. Which is what percent?

A. 10 percent by law.

Q. And would the 10 percent also be added to the judgment against Patricia and Rosalino Agcopra which is Plaintiff's Exhibit 22?

A. I would assume so, yes.

In *Baqui*, Kirschner confirmed that the computer levied 10% post judgment interest on the total judgment against Carmela Baqui and on the total judgment against Patricia and Rosalino Agcopra.

Q. Exhibit Number—

Plaintiffs' Exhibit Number 2, a judgment against Carmela Baqui and its attorney's commission of one hundred eighty-three dollars and thirty-nine cents.

. . . .

Q. And, again, referring to Plaintiffs' Exhibit Number 2, was ten percent interest added on to the total judgment of one thousand seven hundred ninety-three dollars and twenty-nine cents?

A. I don't know.

Q. The computer would be able to tell you that?

A. I don't know.

Q. How would you find out whether interest was added or not?

A. If the courts awarded it, I would assume that Mrs. Leder would—

I don't know.

Q. No. I'm asking post-judgment—

A. I don't know.

Q. —interest of ten percent.

A. I don't know.

Oh, the computer figures ten percent interest.

Q. On the total judgment?

A. I believe so, yes.

Q. And that would be the same for Plaintiffs' Exhibit 3, the judgment against Patricia and Rosalino Agcopra—total judgment would be added—of ten percent?

A. I believe so.

While we believe a foundation for summary judgment may have been laid, we are reluctant to enter summary judgment on appeal. The testimony of the deponents referred to is interspersed with testimony concerning other issues and is part of only short deposition excerpts attached to the moving papers. The record does not clearly show the amount of improper post-judgment interest, if any, which was collected with respect to any of the judgments. Since the issue was never raised by a summary judgment motion, we assume (in the absence of transcripts), the issue of improper post-judgment interest was never fully argued. In any event, any argument had is not a part of the record. Under the circumstances, we deny Plaintiffs' request for summary judgment on appeal on

their second proposition. "Summary judgment will not be awarded to the nonmoving party, however, where, as here, the moving party has not been given a full and fair opportunity to dispute the facts alleged by his adversary[,]" *E.C. Ernst, Inc. v. General Motors Corp.,* 537 F.2d 105 (1976), and the record does not indicate Defendants had such an opportunity.

Opinion of the Court by BURNS, Chief Judge, with respect to Part III.

 We vacate the summary judgments with respect to Count I because the summary judgments were entered before Plaintiffs were reasonably able to discover relevant facts and because there may be one or more genuine issues of material fact.

Plaintiffs alleged that Defendants violated Hawai'i Revised Statutes (HRS) chapter 443B. HRS § 443B–20 (Supp.1992) states that "[a] violation of this chapter by a collection agency shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2." HRS § 480–2(d) (Supp.1992), in turn, permits suit on any unfair and deceptive trade practice to be brought by a "consumer." Plaintiffs are consumers. HRS § 480–13(b) allows "[a]ny consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2" to sue for damages.

> HRS § 443B–9 states in relevant part that an attorney's fee or commission may be collected after filing of a suit against any debtor and the fee or commission shall not be in excess of twenty-five per cent of the unpaid principal balance. All attorney's fees or commissions collected by a collection agency shall be remitted to the attorney and no portion of the collection shall be retained by the collection agency.

In September 1993, Plaintiffs filed motions to compel discovery. In the Fuller case, the motion alleged that

> Defendant Joseph Leder, on advice of their [sic] counsel, Robert Chapman, have [sic] refused to answer any questions regarding the attorney fee agreement Pacific Medical Collections, Inc. (Pacific) had with

their [sic] attorney based on the attorney/client privilege. Additionally, Jack Gonzales has also refused to answer questions or produce documents that were subpoenaed."

The motion in the Baqui case made a similar allegation.

In the Fuller case, the summary judgment in favor of Defendants was entered on December 21, 1993. Thereafter, on January 13, 1994, the circuit court entered two orders granting Plaintiffs' motions to compel discovery. One ordered "that Defendant Joseph Leder must answer questions in his deposition regarding attorney's fees paid to Jack Gonzales, Esq., from Pacific Medical Collections, Inc.[.]" The other ordered "that Jack Gonzales, Esq. must answer questions in his deposition about the attorney's fees he received from Pacific Medical Collections Inc.[.]"

In the Baqui case, the summary judgment in favor of Defendants was entered on December 27, 1993. The orders compelling discovery were entered on January 14, 1994.

In other words, the summary judgments were entered before Defendants' two key witnesses answered Plaintiffs' relevant questions.

The relevancy of Plaintiffs' questions and the validity of Count I is supported by evidence that Defendants collection agencies obtained judgments for and collected as "attorney's fees" an amount equal to no more than twenty-five percent of the unpaid principal balances but, by contract with their attorney, paid their attorney more or less than they collected, *i.e.,* an amount equal to twenty-five percent of the total attorney fees collected in the month, or $800.00, whichever was greater. When considering the merit of Defendants' motions for summary judgment, we consider this evidence to be true and we view it in a light most favorable to the Plaintiffs. 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2716 (1983).

 HRS § 443B–9 mandates that what is actually collected by way of attorney's fees shall be remitted to the attorney. The payment of less attorney fees than is collected is

a violation of HRS § 443B–9. Judge Acoba concludes that this violation of HRS § 443B–9 does not injure Plaintiffs because "there can be no injury to Plaintiffs by the collection agency's failure to remit all attorney's fees collected on the judgment to its own attorney[.]" In his view, if a collection agency collects attorney fees from a debtor and does not pay to its attorney the attorney fees it collects, the debtor has not been damaged. We disagree. In our view, money collected from a debtor as an "attorney's fee" is not an "attorney's fee" when the collection agency did not pay the "attorney's fee" to the attorney.

Moreover, we may be dealing with more than the mere failure of the collection agencies to pay to their attorney all "attorney's fees" they collect. The Defendants may have collected amounts as "attorney's fees" which they knew or should have known were not "attorney's fees." Prior to collecting these amounts, the collection agencies contracted with their attorney as follows: (1) the attorney agreed to assist the collection agencies in obtaining judgments for the principal amount of the debts plus a maximum of twenty-five percent attorney fees; and (2) the collection agencies agreed to pay the attorney on a monthly basis one-fourth of the attorney fees collected during the month or $800.00, whichever is greater.

Thus, when the collection agencies collected the "attorney's fees" from the debtor, they knew whether they would or would not pay all of those "attorney's fees" to the attorney. If, during the month, they collected less than $800.00 "attorney's fees," they paid all "attorney's fees" collected to the attorney. However, if they collected more than $800.00 "attorney's fees," they paid less than all "attorney's fees" collected to the attorney.

If the collection agencies collected attorney fees knowing that, pursuant to contract with their attorney, they would pay their attorney less attorney fees than they collected, the collection agencies have in fact collected under the "attorney's fee" label something other than "an attorney's fee or commission[.]" Obtaining a judgment for and collecting that "attorney's fee" under those circumstances is a serious fraud upon the court and a violation of HRS Chapter 443B, and affords Plaintiffs a cause of action against the collection agencies for the Plaintiffs' resulting damages.

An attorney who has entered into such a contract and conducted his or her business in accordance therewith is subject to citation and sanction for violating the Code of Professional Responsibility.

## CONCLUSION

For the foregoing reasons, (1) in *Fuller* (Appeal No. 17743), the December 21, 1993 Order Granting Defendants Pacific Medical Collections, Inc.'s, Reliable Collection Agency, Ltd.'s, Jonathan Kirschner's and Joseph Leder's Motion to Dismiss Complaint Filed April 30, 1993, Filed July 23, 1993 is vacated; (2) in *Baqui* (Appeal No. 18338), the March 11, 1994 Amended Order Granting Defendants Reliable Collection Agency, Ltd.'s, Jonathan Kirschner's and Joseph Leder's Motion to Dismiss Complaint Filed April 30, 1993, Filed July 23, 1993 is vacated; Count I under the March 11, 1994 Amended Order is vacated by a majority of the court, the dissent disagreeing; and (3) both cases are remanded to the circuit court for further proceedings.