**Steven I. RADLOFF, et al., Appellants,**

v.

**FIRST AMERICAN NATIONAL BANK OF ST. CLOUD, N.A., et al., Respondents.**

No. C6–90–2658.

Court of Appeals of Minnesota.

May 14, 1991.

Review Denied July 24, 1991.

See also, 455 N.W.2d 490.

Michael A. Pinotti, Roseville, John E. Thomas, St. Paul, for appellants.

Kevin J. Hughes, Jean M. Didier, Hughes, Thoreen, Mathews & Knapp, St. Cloud, for respondents.

Considered and decided by DAVIES, P.J., and LANSING and MULALLY,* JJ.

## OPINION

DAVIES, Judge.

Respondent bank, after being vindicated of any lender liability by summary judgment on all claims, moved the trial court for attorney fees and costs under Minn. Stat. § 549.21 and Minn.R.Civ.P. 11. The trial court sanctioned appellants and their attorneys by awarding attorneys fees of $22,037. We modify the award of fees and affirm.

## FACTS

This lawsuit arose in the context of a farmer-lender dispute. Plaintiffs Steven and Barbara Radloff alleged the First American National Bank of St. Cloud

(bank), by various acts, forced them into bankruptcy in 1985, wrongfully destroyed 25 to 35 acres of asparagus crowns in 1986, and interfered with their purchase of a farm in 1987.

More than 17 causes of action were advanced by Radloffs during these proceedings. After the bank had prepared its May 1990 memorandum in support of its motion for summary judgment, Radloffs voluntarily dismissed eight claims. The complaint was amended twice to add additional claims. During the proceeding, the trial court denied Radloffs' motion to add a RICO claim and an additional defendant. The court also dismissed a claim for personal injury and actions against two separate defendants. There were 17 hearings, 12 on unsuccessful motions by the Radloffs.

Nine separate causes of action survived after the voluntary withdrawal of claims: fraud, duress, tortious interference with contract or business advantage, violation of the bank holding company act, restraint of trade, outrage, trespass, breach of fiduciary duty, and wrongful repossession. On July 19, 1990, the trial court granted summary judgment for the bank on each of the nine claims, and this court affirmed on February 5, 1991. Radloffs' petition for review was denied on March 27, 1991.

On October 2, 1990, while the appeal to this court was pending, the trial court, upon the bank's motion, awarded attorney fees of $22,037 against Radloffs and their attorneys, collection of which was stayed until after the disposition of any appeals.

## ISSUES

I. Was it lawful to award attorneys fees while the underlying action was on appeal?

II. Did the trial court abuse its discretion in ordering attorney fees to be paid by Radloffs and their attorneys?

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

III. Did the trial court abuse its discretion in not awarding attorney fees to the Radloffs?

IV. Was adequate notice given that sanctions could be imposed?

## ANALYSIS

Several threshold matters must be addressed initially. We first note that costs and disbursements of $6,104.37 were assessed against the Radloffs. The costs are not being appealed as unreasonable, however, so we decline to comment on them. *See* Minn.Stat. § 549.04 (1988).

Next, we consider the propriety of this appeal by Radloffs' attorney, Michael A. Pinotti, when he neither intervened to become a party in this case nor filed a separate appeal. Had he filed a separate appeal, it could have been consolidated with this appeal for purposes of efficiency. While we do not advocate bypassing proper procedures, we will, to move this protracted litigation along, allow Pinotti's appeal in conjunction with the Radloffs' appeal.

## I.

### *Trial Court Jurisdiction*

■ Radloffs' motion to postpone the trial court hearing on fees and costs until the appeals had run their course was denied by the trial court. We affirm the trial court on this matter. Minn.R.Civ.App.P. 108.03, which stays further proceedings in the trial court during appeal, was inapplicable because the attorney fees issue was an "other matter," independent of the merits of the litigation. Moreover, all of the requests for sanctions related to causes of action that were not on appeal. The policy of efficiency was served, as it was anticipated that any appeal of the fees could be consolidated with the then pending appeal of the merits of the action. This procedure is consistent with *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 825–26 (Minn.1984), where a trial court retained jurisdiction to award attorney fees while the substantive issues of the case were on appeal. We adopt this rationale for upholding trial court jurisdiction to award fees. *See Seib-*

*erlich v. Burlington N.R.R. Co.*, 447 N.W.2d 896, 899 (Minn.App.1989) (trial court retained jurisdiction to award trial costs while case was on appeal because they were "collateral and supplemental to decision on the merits"), *pet. for rev. denied* (Minn. Jan. 12, 1990).

Additionally, we note that there was minimal prejudice to the Radloffs, as collection of the judgments for attorney fees and costs was stayed pending the disposition of any appeals.

Now, to the merits.

## II.

### *Award of Attorney Fees to the Bank*

■ The standard of review of decisions on attorney fees and costs under both Minn.Stat. § 549.21 (1988) and Minn.R. Civ.P. 11 is whether the trial court abused its discretion. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982); *Uselman v. Uselman*, 464 N.W.2d 130, 145 (Minn.1990).

The trial court awarded attorney fees under both section 549.21 and rule 11 without specifically differentiating between their respective grounds for sanctions. Considering the similarity between the statute and rule, that was not an abuse of discretion.

■ Section 549.21 requires bad faith, a frivolous claim which increases the opponent's costs, an unfounded position taken to delay the action or harass the opponent, or fraud upon the court. A good faith argument for a change in the law excuses the advancement of a claim unwarranted under existing law.

Under rule 11, before signing a document, the attorney or party has an affirmative duty reasonably to investigate the factual and legal bases of claims made in the document to determine that they are well grounded and not made for an improper purpose, such as to harass, or increase the costs of, the opponent, or to delay the proceedings. "[A] good faith argument for the extension, modification, or reversal of existing law" excuses a claim not supported by existing law. If there are viola-

tions under rule 11, sanctions are mandatory.

■ Under both the statute and the rule, conduct is measured by an objective standard. *See Uselman*, 464 N.W.2d at 140, 142–43. Sanctions are not appropriate merely because a party does not prevail on the merits. *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure*, 121 F.R.D. 101, 118 (1988). The filing of excessive pleadings or motions may constitute an improper purpose. *Id.* at 121. "[T]he extent to which the offender persisted in advancing a position while on notice that the position was not well grounded in fact or * * * law" is an aggravating factor. *Id.* at 125–26; *see Uselman*, 464 N.W.2d at 146 (Simonett, J., concurring specially).

■ The conduct of the appellants in this case deserves sanction under the standard of the *Uselman* case. The award of attorneys fees was justified for the purpose of deterring such conduct. Here, the behavior of the appellants in asserting multiple baseless causes of action resulted in increased costs for all parties and distracted the attention of the court from any theories that might possibly have had some merit. The conduct of appellants throughout frustrated the expeditious pursuit of justice.

*Uselman* instructs us that the purpose of sanctions is to deter violators, rather than to punish or to compensate, but to avoid chilling imaginative litigation, "[t]he court should impose the least severe sanction necessary to effectuate the purpose of deterrence." *Id.* at 145. In conjunction with this policy, the court should "consider the attorney's or party's ability to pay." *Id.*

The sanctions in this case were ordered by the trial court before *Uselman* was decided. We note, however, that, although there was evidence that total fees incurred by the bank were $172,000, the trial court awarded fees of only $22,037. The amount reflects both the policy of deterrence and respect for differing capacities to pay.

The trial court divided the sanctionable incidents into eight categories. We find no abuse of discretion in the trial court's sanctioning both Radloffs and attorney Pinotti in connection with any category, but as to category E we reduce the amount.

### A. Defective Service of Process

Appellants served the bank to obtain jurisdiction over two entities separate from the bank. They made incorrect assumptions about the relationship of the bank to the two entities, and advanced various unsupportable legal theories to validate the service. Thereafter, appellants improperly listed the two entities as defendants in the case caption. Later they consented to an order dismissing the entities from the lawsuit. The trial court faulted their investigation into the factual and legal basis for the service. Additionally, the court found appellants acted in bad faith and that the method of service was frivolous. Fees of $2,000 were awarded.

### B. RICO Claim

The Radloffs and Pinotti were denied leave of court to file a fourth amended complaint to add a RICO claim. The trial court objected because the motion to amend was brought so late in the proceeding and because there was no pattern of criminal activity in this case. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 236–39, 109 S.Ct. 2893, 2899–2900, 106 L.Ed.2d 195 (1989). Appellants argue that they were motivated by a recent change in federal law that gave state courts concurrent jurisdiction over RICO claims. Even so, there was no factual basis in this case to prove any criminal activity by the bank. The trial court found bad faith, as the claim was "brought for the purpose of delay" and to increase the bank's costs. Additionally, the cause of action could not be "supported under existing law, or any good faith argument for [its] extension." Fees of $1,013 were awarded.

### C. Motion to Join First American Farm Credit Co.

The Radloffs and Pinotti attempted to add a financial institution as another defendant. The timing was in direct violation of

the trial court order which set a deadline for adding parties. Appellants listed the new entity in the case caption without leave of court. The trial court found their position frivolous, wasteful, without legal foundation, and lacking in good faith. No separate fees were assessed.

### D. Personal Injury Claim

On April 10, 1990, the trial court granted the bank's motion for summary judgment on the Radloffs' claims for personal injury. The claims were for the negligent causation of emotional distress and concomitant physical effects. Appellants, however, never provided evidence linking the bank's commercial activities with the medical problems of the Radloffs, most of which predated the litigation.

Appellants cite *Venes v. Professional Serv. Bureau, Inc.*, 353 N.W.2d 671 (Minn. App.1984), to support their contention that no exacerbation of previous physical symptoms is required for liability. *Venes*, however, is an *intentional* emotional distress case which does not require physical manifestations and there *were* physical symptoms suffered by the emotionally distressed party in *Venes*.

The trial court awarded $5,000 to the bank, finding appellants failed to make "any reasonable inquiry into the underlying facts" to establish a causal link. Additionally, "[t]he claims were frivolous, unwarranted and without foundation."

### E. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress separate from the personal injury claim was defended as barred by the statute of limitations. Nevertheless, appellants persisted with this claim over a two-year period. The trial court awarded fees of $967, finding the failure to perform preliminary research on the applicable law and refusal to dismiss the claim to be in bad faith. Appellants dispute the monetary award, contending they were fined more than once for claims related to emotional distress. We agree that the additional award of $967 should be vacated, but we do not disagree with the trial court's reprimand of Pinotti.

### F. Request for Judicial Notice

Appellants repeatedly argued that the trial court should take judicial notice of a 22–year–old criminal conviction of one of the bank's witnesses. Most recently they rehashed the argument during this appeal. Appellants persisted with a baseless theory. The trial court awarded fees of $1,099, finding bad faith, frivolity, and the lack of "any well-reasoned arguments for extension or reversal of existing law."

### G. Tort Theory of Breach of Duty of Good Faith or Fair Dealing

■ Appellants submitted a claim on a tort theory of breach of duty of good faith or fair dealing, but eventually withdrew it. There is no tort cause of action in Minnesota on this theory. *Wild v. Rarig*, 302 Minn. 419, 442, 234 N.W.2d 775, 790 (1975), *cert. denied* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), *reh'g denied* 425 U.S. 945, 96 S.Ct. 1689, 48 L.Ed.2d 190 (1976). Appellants contend they admitted the current state of Minnesota law, but sought its change. They advanced no credible arguments, however, to support a modification of existing law. The trial court awarded $640, admonishing Pinotti that the groundless claim should not have been brought.

### H. Claims Withdrawn by Appellants

■ Subsequent to the bank's preparation of its memorandum for the May 1990 summary judgment motion, appellants withdrew eight claims: emotional distress, conversion, control, breach of contract, breach of confidential relationship, assault, wrongful dishonor, and prima facie tort. Appellants could have withdrawn the claims earlier, as they admitted they knew by April 13, 1990, that they did not intend to pursue these claims. Appellants defend by arguing that had they been asked directly about their plans, they would have responded truthfully. That is not an adequate defense for the failure to make timely disclosure. The trial court awarded fees of $11,318, finding a "bad faith omission"

which caused a useless expenditure of time and effort by the bank.

## III.

### *Denial of Attorney Fees to Radloffs*

█ Radloffs' claim to attorney fees is grounded on statements by the bank allegedly misrepresenting appellants' stance regarding the bank's right to setoff. Appellants argue that, contrary to the bank's assertions, they never contested the bank's right to offset any adverse jury award with the balance of the bank's loan discharged in Radloffs' bankruptcy proceeding. Appellants continue to persist in this argument, even though it is irrelevant because all of their claims were dismissed by the trial court prior to trial, precluding any jury verdict to set off. The trial court denied an award of attorney fees to Radloffs, and we affirm.

## IV.

### *Notice Requirement*

█ *Uselman* requires notice of the possibility and reasons for the prospective imposition of sanctions. At issue in this case is whether Radloffs and Pinotti received adequate warning to provide them "the opportunity to correct future conduct." *Uselman*, 464 N.W.2d at 143. Although appellants did not precisely appeal the notice issue under *Uselman*, it should be addressed by this court.

On April 10, 1990, three months prior to the final hearing, the trial court granted the bank's summary judgment motion by dismissing the Radloffs' personal injury claims. Regarding Barbara Radloff's hypertension, the trial court stated that according to the medical evidence, the problem "pre-date[d] by a number of years the Radloffs' business dealings with defendants." As to Steven Radloff's claim, the trial court found it even weaker than Barbara's. The court disparaged the medical expert's opinion as "little more than plaintiffs' own version of events."

The summary judgment orders, along with numerous other orders denying relief to Radloffs, were ample warning to alert them that they could be subject to sanctions. Explicit warning was not required in this case, since unlike the pre–1986 version of Minn.Stat. § 549.21 relied upon by the *Uselman* court, the post–1986 version of the statute does not contain the provision which specifically required "timely notice of intent to claim an award." Further, the trial court here appropriately terminated all proceedings at the earliest opportunity, foreclosing most chances to warn specifically against appellants' actions.

## DECISION

We find no abuse of discretion by the trial court in sanctioning Radloffs and their attorney; however, we vacate $967 of the award and reduce the $22,037 award of attorney fees to $21,070. We also affirm the denial of fees to the Radloffs.

Affirmed as modified.