**CARGILL INCORPORATED,**
**Appellant,**

v.

**JORGENSON FARMS, Respondent.**

**No. A05–2287.**

Court of Appeals of Minnesota.

Aug. 8, 2006.

---

Bruce Jones, Allan A. Thoen, Faegre & Benson, LLP, Minneapolis, MN, for appellant.

Dustan J. Cross, Ryan R. Dreyer, Gislason & Hunter, LLP, New Ulm, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellant Cargill Incorporated appeals from summary judgment dismissing its breach-of-contract claim against respondent Jorgenson Farms, arguing that it was denied the opportunity to conduct necessary discovery, that genuine issues of material fact regarding the formation of a contract between the parties preclude summary judgment, and that the district court erred by denying its motion to compel arbitration and by granting respondent's motion for attorney fees under Minn.Stat. § 549.211 (2004). We affirm.

## FACTS

Appellant Cargill Incorporated is an international provider of food, agricultural products, and risk-management products and services. Respondent Jorgenson Farms is in the business of raising soybeans and corn for market.

Cargill commenced this action against Jorgenson Farms alleging, inter alia, that Jorgenson Farms breached its agreement to sell Cargill 80,000 bushels of corn for delivery in December 2003. Jorgenson Farms denied the existence of the contract and moved for summary judgment. Jorgenson Farms's summary-judgment motion was supported by the affidavits of Ben Presthus, a Cargill employee during the relevant period, and James Jorgenson, co-owner of Jorgenson Farms.

Presthus stated that he was the exclusive Cargill contact with Jorgenson Farms and had the authority to enter into contracts with it. His normal practice was to maintain a diary in which he kept notes of every contract entered into on Cargill's behalf and then to personally contact Cargill's accounting department for entry of those contracts into Cargill's client-records system. Thereafter, Cargill would send out written confirmation of the contract to the client for execution and return to Cargill. Presthus followed this procedure with Jorgenson Farms throughout the course of their dealings. Presthus confirmed that on July 17, 2003, he negotiated two contracts with Jorgenson Farms for 100,000 and 135,000 bushels of corn respectively, which Jorgenson Farms performed.

Presthus specifically denied that Jorgenson Farms entered into a contract with Cargill for the delivery of 80,000 bushels of corn. He stated:

At no time did Jorgenson Farms ever enter, or intend to enter, into contract MILO–AH 27985 in or about July of 2003, either verbally or in writing or otherwise. In fact, I specifically told my supervisor, Mr. Brad Morrison, that the purported contract never existed, and I have no entry in my daily journal that such contract was created. My daily records only show the 100,000 and 135,-000 bushel contract that was performed by Jorgenson Farms.

Presthus concluded that the confirmation of a contract for 80,000 bushels of corn, Contract # 27985, was a clerical error. Presthus stated that those present at a meeting he attended with Brad Morrison of Cargill and James Jorgenson of Jorgenson Farms to discuss the disputed contract agreed that Contract # 27985 "was never entered into, and that Mr. Morrison would begin the process of deleting the contract from Cargill's accounting system." Presthus attended a second meeting in January 2004, at which he "reiterated to Mr. Morrison that Jorgenson Farms in no way, verbally or in writing or otherwise, approved the ostensible contract for 80,000 bushels of corn."

In his affidavit, James Jorgenson stated that he is a farmer and that he has entered into and performed numerous contracts for

the sale of corn and soybeans to Cargill. He stated that he "did not enter into a contract for the sale of 80,000 bushels of corn to Cargill on or about July 17, 2003, either verbally, in writing or otherwise." He also stated that when he was notified of the existence of the contract, he "was partially stunned, because [he] did not enter into the contract." He acknowledged that he received a packet of information in October 2003, which included Contract # 27985; but he noted that he did not notice the packet until sometime later because October is "harvest time for us and I was busy in the fields." In December 2003, he met with two Cargill employees, Presthus and Morrison, to discuss the "purported contract." He stated that everyone agreed that the contract never existed. He also stated that the "underlying contract was never delivered to [him] by Cargill." James Jorgenson also attended a January 2004 meeting with the same individuals, at which it was confirmed by all present that no agreement was made for the sale of 80,000 bushels of corn to Cargill, but that Morrison "informed me that his superiors at Cargill would not allow for the deletion of the invalid contract."

Cargill submitted the affidavits of Kurt Peterson and Brad Morrison in opposition to the motion for summary judgment. Peterson stated that he is the farm service group manager for Cargill and that he attended a meeting at Jorgenson Farms with Morrison in April 2004 to discuss the disputed 80,000–bushel corn contract. At the meeting, James Jorgenson admitted that he received an e-mail from Cargill in October 2003, notifying him of put options allowing the future sale of corn at a specific price, including the 80,000–bushel corn contract. James Jorgenson also admitted that Jorgenson Farms did not respond to the put options. Attached to his affidavit was a copy of Morrison's notes of meetings

with Jorgenson Farms, the dates of which are not consistent with the meeting dates identified in Presthus's affidavit.

Brad Morrison, who was employed by Cargill during the relevant time period, stated that he attended a meeting regarding the disputed contract, at which the Jorgensons referred to the contract by its number, even though they claimed to have never seen the contract. He denied agreeing at the meeting that the contract did not exist or that he would begin the process of deleting it from Cargill's accounting system. Because the disputed contract was not a "run-of-the-mill" contract, he disputed Presthus's statement that the contract was created by clerical error.

In September 2004, Cargill sent a letter to the National Grain and Feed Association (NGFA), requesting arbitration of the disputed 80,000–bushel corn contract. When notified of the request by the NGFA, Jorgenson Farms replied, denying the existence of the contract that contained an agreement to arbitrate.

In January 2005, Cargill served Jorgenson Farms with its summons and complaint seeking to compel arbitration or, in the alternative, seeking damages. But Cargill delayed filing its summons and complaint with the district court. In March 2005, Jorgenson Farms responded by letter denying the existence of the contract and indicating that it would apply for sanctions if Cargill pursued the lawsuit. In July 2005, after Cargill filed its summons and complaint with a motion to compel arbitration, Jorgenson Farms in turn served a motion for summary judgment and a motion for sanctions under Minn. Stat. § 549.211 (2004) and Minn. R. Civ. P. 11.03.

In August 2005, the district court held a hearing on all outstanding motions. During oral argument, Cargill requested that

it be allowed additional time to conduct discovery before the district court ruled on respondent's motion for summary judgment. The district court denied Cargill's request and filed an order (1) granting Jorgenson's motion for summary judgment, (2) denying Cargill's motion to compel arbitration, and (3) granting Jorgenson's motion for sanctions in the amount of $5,000. This appeal follows from the entry of judgment.

## ISSUES

I. Did the district court abuse its discretion by denying Cargill's request for a continuance to conduct further discovery?

II. Did the district court err by determining that there was no genuine issue of material fact as to the existence of a contract for 80,000 bushels of corn?

III. Did the district court err by denying Cargill's motion to compel arbitration?

IV. Did the district court abuse its discretion by sanctioning appellant under Minn.Stat. § 549.211?

## ANALYSIS

### I.

Cargill contends that the district court abused its discretion by denying Cargill's request for a continuance to conduct discovery before ruling on Jorgenson Farms's summary-judgment motion. The decision to grant or deny a continuance is within the district court's sound discretion and will not be reversed absent an abuse of discretion. *State v. Sanders*, 598 N.W.2d 650, 654 (Minn.1999).

■ There is a "presumption in favor of granting continuances to allow sufficient time for discovery[.]" *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982). But

[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present, by affidavit, facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Minn. R. Civ. P. 56.06. When determining whether to grant a continuance, the court considers first, whether the moving party has been "diligent in obtaining or seeking discovery" and, second, whether the moving party seeks further discovery with "the good faith belief that material facts will be uncovered, or ... [is] merely engaging in a 'fishing expedition[.]'" *Rice*, 320 N.W.2d at 412.

■ Here, Cargill had approximately seven months to conduct discovery from the time it first served its complaint on Jorgenson Farms on January 18, 2005, until the motion hearing on August 26, 2005. *See, e.g., Dunham v. Roer*, 708 N.W.2d 552, 572 (Minn.App.2006) (holding that district court did not abuse its discretion by denying continuance when appellant had ten months to complete discovery on claims that were not overly complicated), *review denied* (Minn. Mar. 28, 2006); *cf. Perl*, 320 N.W.2d at 413 (holding that plaintiff was diligent in seeking discovery when defendants moved for summary judgment roughly two weeks after filing of complaint, whereupon plaintiff moved for a continuance).

During this time, Cargill failed to serve any interrogatories, requests for production of documents or admissions, or notices of depositions of parties or witnesses. Cargill had been on notice that Jorgenson Farms claimed that there was no contract to sell 80,000 bushels of corn and, therefore, no agreement to arbitrate since at least October 2004, when Jorgenson Farms sent a letter to the NFGA.

Cargill argues that it did not pursue any discovery because it desired to first resolve its arbitration request. But Cargill chose to not pursue discovery when it knew that respondent vigorously challenged the existence of the contract that contained an agreement to arbitrate. And Cargill's motion to compel arbitration ultimately depended on whether there was a valid contract. Consequently, we agree with the district court that Cargill was not diligent in seeking discovery.

## II.

Cargill contends that genuine issues of material fact regarding formation of the contract preclude summary judgment. A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court erred in applying the law. *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn.2004). A material fact is one that will affect the outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn. 2005). We also draw all inferences from circumstantial evidence against the party seeking summary judgment. *Forsblad v. Jepson*, 292 Minn. 458, 459–60, 195 N.W.2d 429, 430 (1972).

The party opposing summary judgment may not rely on "unverified and conclusory allegations, or postulated evidence that might be developed at trial, or metaphysical doubt about the facts" to establish a genuine issue of material fact. *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 783 (Minn.2004). Summary judgment is appropriate as a matter of law when the record is devoid of proof on an essential element of the plaintiff's claim. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). To survive summary judgment, a party need not show substantial evidence; it needs only to produce *sufficient evidence* to permit reasonable persons to draw different conclusions. *Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn.2006).

To prevail on a breach-of-contract claim, a plaintiff must show that a contract has been formed. *Indus. Rubber Applicators, Inc. v. Eaton Metal Prods. Co.*, 285 Minn. 511, 513, 171 N.W.2d 728, 731 (1969), *overruled on other grounds by Standslast v. Reid*, 304 Minn. 358, 231 N.W.2d 98 (1975). Whether a contract exists is generally a question of fact. *Gresser v. Hotzler*, 604 N.W.2d 379, 382 (Minn.App.2000). But if taking the record as a whole, a rational trier of fact could not find for the nonmoving party, summary judgment is appropriate. *Id.*

The Uniform Commercial Code provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Minn.Stat. § 336.2–204(1) (2004). An "agreement" "means the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealings, or usage of trade...." Minn.Stat. § 336.1–201(3) (2004). "A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that

is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Minn.Stat. § 336.1–303(b) (2004).

■ Jorgenson Farms argues that the evidence is insufficient as a matter of law to show the formation of a contract. Based on the evidence before the district court, the only witnesses having direct knowledge of the existence of a contract were Ben Presthus and James Jorgenson. Both witnesses deny the existence of the disputed contract for the sale of 80,000 bushels of corn. But Cargill argues that circumstantial evidence creates genuine issues of material fact that such a contract was formed. To support the argument, Cargill relies on its internal operating procedures, including (1) the written confirmation of the contract by its representative, Cory Bratland, signed, dated, and mailed in July 2003; (2) the October 2003 put-option addendum to the written confirmation of the contract Cargill sent to Jorgenson Farms; and (3) internal communications among Cargill employees regarding the put options, including an e-mail from Bratland to Presthus listing, among other things, put options for the purported 80,000 bushels of corn.

Cargill argues that because Jorgenson Farms did not respond to the written confirmation of the contract that Cargill signed and mailed in July 2003, it acquiesced to the formation of the contract. But the confirmation indicates, on its face, that it must be signed and returned to Cargill and provides a signature line. It also states: "Please sign and date the original and attached copy of this contract. The original must be returned to Buyer at the above-referenced address, and the copy should be retained for Seller's records." Jorgenson did not sign or return the contract; thus, under the express terms of the document, no contract was formed.

■ The crux of Cargill's argument is that Jorgenson's silence is sufficient evidence of the formation of a contract to avoid summary judgment. But "[o]rdinarily, mere silence does not amount to an acceptance." *Gryc v. Lewis*, 410 N.W.2d 888, 892 (Minn.App.1987). Only "when the relationship between the parties is such that an offeror is justified in expecting a reply or the offeree is under a duty to respond, silence will be deemed an acceptance." Id. Here, both parties denied the existence of an oral agreement, and Cargill has offered no evidence that, given its course of dealing with Jorgenson Farms, silence on the part of Jorgenson Farms was tantamount to acquiescence to the contract.

Cargill also argues that Jorgenson Farm's failure to respond to the October 2003 put-option addendum to the purported contract is sufficient evidence of the formation of a contract to avoid summary judgment. But again, Cargill has shown no acceptance, written or oral, on Jorgenson Farm's part. Cargill also points to an internal e-mail from Cargill employee Cory Bratland, listing the put options for the disputed 80,000 bushel contract, as sufficient evidence of a contract. But a communication between Cargill's co-employees is not evidence of a contract with Jorgenson Farms. *See, e.g., Hy–Vee Food Stores, Inc. v. Minn. Dep't. of Health*, 705 N.W.2d 181, 185 (Minn.2005) ("the formation of a sales contract requires the *mutual* assent of the parties engaging in the transaction.") (emphasis added).

■ Cargill challenges the credibility of Presthus on the basis that he may be a "close relative of the Jorgensons" and that he now works for Pro Pig, a Cargill competitor, and is therefore motivated to obtain Jorgenson Farms as a customer for

his new employer. But to forestall summary judgment, the nonmoving party must do more than rely on "unverified or conclusionary allegations" in the pleadings or postulate evidence which might be produced at trial. *Lubbers,* 539 N.W.2d at 401. Here, Cargill produced no evidence that Presthus is related to the Jorgensons, that Pro Pig is in fact a competitor of Cargill, that Pro Pig has any business relationship with Jorgenson Farms, or that such dealings would affect the credibility of Presthus's testimony. Cargill's claim rests only on speculation and is therefore insufficient to forestall summary judgment.

As a separate affirmative defense, Jorgenson Farms raised the statute of frauds. The statute of frauds is satisfied by a contract "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received." Minn.Stat. § 336.2–201(2) (2004). But the district court concluded that no contract was formed between the parties and, therefore, did not reach the issue of whether an "oral contract" was nonetheless enforceable. Consequently, we decline to reach the statute-of-frauds issue.

### III.

Cargill next contends that the district court erred by denying its motion to compel arbitration. This court reviews de novo the district court's denial of a motion to compel arbitration. *Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790, 795 (Minn.1995). When considering a motion to compel arbitration, we must determine only (1) whether a valid arbitration agree-

ment exists, and (2) whether the dispute falls within the scope of the arbitration agreement. *Amdahl v. Green Giant Co.,* 497 N.W.2d 319, 322 (Minn.App.1993). Because we conclude that the district court did not err by concluding that the parties did not form a contract for the sale of 80,000 bushels of corn, we also conclude that the district court did not err by denying Cargill's motion to compel arbitration.

### IV.

Cargill contends that the district court abused its discretion by ordering sanctions of $5,000 in attorney fees under Minn.Stat. § 549.211 (2004). We will reverse an award of attorney fees only if the award constitutes an abuse of the district court's broad discretion. *Mut. Serv. Cas. Ins. Co. v. Midway Massage, Inc.,* 695 N.W.2d 138, 143 (Minn.App.2005), *review denied* (Minn. June 14, 2005).

Minn.Stat. § 549.211, subd. 2(1) (2004), provides that when an attorney presents a pleading to the court, the attorney certifies that, after a reasonable investigation, the pleading, inter alia, "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]"

Cargill argues that the district court abused its discretion by imposing sanctions without making a finding that Cargill or its counsel maintained its breach-of-contract claim in "bad faith." But the current version of section 549.211 does not require an explicit finding of "bad faith." *Compare* Minn.Stat. § 549.211 (2004), *with* Minn. Stat. § 549.21, subd. 2 (1996) (allowing the court in its discretion to award sanctions if the party "acted in bad faith"), *repealed by* 1997 Minn. Laws ch. 213, art. 2, § 6. Rather, Minn.Stat. § 549.211, subd. 2(1), allows the district court, in its discretion, to award reasonable attorney fees when a

party fails to conduct a reasonable investigation to ensure that the pleadings are not being presented for an improper purpose. Thus, it was not necessary for the district court to make an explicit finding of "bad faith" to determine that Cargill had violated the provisions of section 549.211, subdivision 2.

Cargill was on notice since October 2004 that Jorgenson Farms asserted that no contract to sell 80,000 bushels of corn was formed. The only direct evidence regarding the disputed agreement was provided by Presthus and Morrison, each of whom denied that an oral agreement to sell 80,000 bushels of corn was ever made. After notice that Jorgenson Farms contended that Cargill's claim was frivolous, Cargill failed to either conduct the discovery or dismiss its claim. The district court determined that sanctions were warranted against Cargill because of Cargill's "willingness to continue [its] claim against Jorgenson without adequately addressing those assertion[s] made by Mr. Presthus (which they had advance notice of)." In essence, the district court found that Cargill had violated the provisions of Minn. Stat. § 549.211, subd. 2(1). *See id.* at subd. 3 (a court may impose an appropriate sanction if subdivision 2 is violated) On this record, the district court did not abuse its discretion by sanctioning Cargill without making an express finding of "bad faith."

## DECISION

The district court did not abuse its discretion by denying Cargill's request for a continuance to conduct further discovery. Cargill failed to establish that genuine issues of material fact preclude summary judgment on its breach-of-contract claim. Because there is no genuine fact issue as to the existence of a contract to sell 80,000 bushels of corn, the district court did not err by denying Cargill's motion to compel arbitration. Nor did the district court abuse its discretion by sanctioning Cargill under Minn.Stat. § 549.211, subd. 2(1), without making an express finding of "bad faith." Accordingly, we affirm the district court's grant of Jorgenson Farms's motion for summary judgment and the award of attorney fees.

**Affirmed.**