*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0495**

Randy Lubben,
Appellant,

vs.

Copart, Inc.,
Respondent,

Metro Salvage Pool, Inc. d/b/a Metro Remarketing,
Defendant,

and

Copart, Inc.,
Third Party Plaintiff,

vs.

True North Equipment Co.,
Third Party Defendant.

**Filed December 14, 2015
Affirmed; motions denied
Connolly, Judge**

Stearns County District Court
File No. 73-CV-14-1589

Matthew C. Berger, Gislason & Hunter LLP, New Ulm, Minnesota (for appellant)

Michael C. Lindberg, Peter M. Lindberg, Johnson & Lindberg, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant buyer challenges the grant of summary judgment dismissing his breach-of-contract claim against respondent seller; respondent moves this court for attorney fees and sanctions. Because no genuine issue of material fact precluded the grant of summary judgment and the district court did not err in its application of the law, we affirm; because appellant's conduct does not warrant attorney fees or sanctions, we deny respondent's motion.

**FACTS**

In November 2013, appellant Randy Lubben became a member of respondent Copart Inc., a business providing its members with access to online auctions of cars, trucks, and farm machinery. Lubben agreed to the Copart Membership Terms & Conditions (T&C), which provided:

> I.  DISCLAIMERS
>
> A.    Vehicle Condition and History Disclaimer
> . . . .
> . . . Copart and its sellers expressly disclaim the accuracy or completeness of any and all information provided to Members regarding vehicles, whether provided in written, verbal, or digital image form . . . .
> . . . .
> II.  SALE POLICIES
> . . . .
> B.    Sale Cancellation.    Copart may, in its sole and absolute discretion and with or without notice, postpone or

2

cancel a sale or withdraw a vehicle from a sale. Copart will neither have liability nor obligation to Members as a result of any vehicle withdrawal, or sale cancellation or postponement.

. . . .

**G.    Vehicle and Title Release.    Copart reserves the right not to release any vehicle or vehicle title for any reason.**

. . . .

I.    Risk of Loss. Member takes full responsibility and assumes all risk of loss for all vehicles purchased from the time Copart accepts Member's bid. . . . In the event Copart is responsible [for any loss], damages shall be limited to . . . the purchase price (in which case Member shall return the vehicle to Copart).

(Emphasis added.)

In the fall of 2013, Gudajtes Farms (GF) delivered two damaged heads (pieces of farm machinery used in harvesting) to respondent True North Equipment Co., a John Deere dealership that sells, leases, and services John Deere equipment (True North). One was a bean head (John Deere 640FD, serial number ending in 745452) that GF leased from True North; the other was a corn head (John Deere 618C, serial number ending in 755266) that GF owned.

The bean head was so extensively damaged that, rather than repair it, GF's insurer totaled it, purchased it from True North, and engaged an Iowa firm, Metro Salvage Pool Inc., d/b/a Metro Remarketing (Metro) to sell it as salvage. On December 11, 2013, Metro subcontracted the sale to Copart, which arranged to have a truck pick up the bean head from True North and bring it to the Copart yard in Avon, Minnesota.

On December 30, 2013, when the truck arrived at True North to pick up the bean head, GF's corn head was still there, awaiting repair. The corn head, rather than the bean head, was inadvertently loaded on the truck and transported to Copart later that day.

The corn head was photographed, listed wrongly as a John Deere 6400 (a tractor model) and entered in an online listing of items up for auction. Because heads are not titled property, Copart drafted a Bill of Sale for the corn head.

On January 6, 2014, Lubben called Copart to ask for the complete serial number of the item pictured because (1) the picture showed it was not a tractor and the 6400 number indicated that it was a tractor and (2) only the last six digits of the item's serial number appeared online. A Copart employee who had checked the item called Lubben with the complete serial number, the last six digits of which were 755266, not 745452. From the complete serial number, Lubben knew that the item was in fact a corn head, as the picture indicated.

On January 8, 2014, Lubben visited Copart and looked at the corn head. On January 10, 2014, he placed an online bid of $45,000 on what he then knew was actually a John Deere 640C corn head and was informed by Copart that his winning bid on "a 12 Deer 6400 Green," or tractor, was accepted. At that point, neither Lubben nor Copart knew that the corn head actually belonged to GF, which had no intention of selling it.

On January 30, 2014, Copart was informed that True North's bean head, which Copart had been asked to sell for salvage, was still at True North and that GF's corn head had been wrongly loaded on the truck instead of True North's bean head. Later that day, Lubben arrived at Copart to pick up the corn head.

4

He spoke in person with the Avon site manager and by telephone with a Copart dealer-services account manager in Minneapolis, both of whom told him that the corn head could not be released to him because it belonged to a third party and that his purchase price would be refunded.[1] It is not disputed that the purchase price was refunded to appellant.

Lubben brought this action against Copart, claiming that he is the true owner of the corn head.[2] Copart moved for summary judgment and for attorney fees and sanctions. The district court granted summary judgment dismissing Lubben's claims and denied Copart's motion for attorney fees and sanctions. Lubben challenges the grant of summary judgment, arguing that terms in the T&C do not prevent his recovery and that he is entitled to the corn head under the relevant statutes. Copart argues that the appeal is frivolous and moves for attorney fees and costs; Lubben also seeks the attorney fees and costs incurred in responding to Copart's motion.

---

[1] In August 2014, during his deposition, Lubben testified that the Copart representative from Minneapolis told him he could not have the corn head because "it was sold too cheap" and that he had not heard prior to his deposition that the corn head belonged to a third party. Copart's attorney then told Lubben that, soon after the lawsuit began in February 2014, Lubben's attorney had been informed that the corn head belonged to a third party. Lubben did not reply when asked if he received that message from his attorney. After a recess, Lubben's attorney clarified that Lubben had been informed that the corn head belonged to a third party. The district court found that, when Lubben went to pick up the corn head, "Copart informed [him] that the wrong equipment had been sold to him." Lubben does not challenge this finding on appeal.

[2] During his deposition, Lubben replied, "That's not my responsibility" when asked if he was comfortable having GF lose ownership of equipment it brought in for repair; he replied "Yes" when asked if he was telling the Court "that [GF] should not have been able to use [its] corn head because of somebody else's mistake."

### 1. Summary Judgment

On appeal from summary judgment, this court considers de novo whether any genuine issue of material fact precludes summary judgment or whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, LLP*, 644 N.W.2d 72, 77 (Minn. 2002). The district court concluded that the T&C precluded Copart's liability.[3]

"Absent ambiguity, the interpretation of a contract is a question of law" and is reviewed de novo. *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011). Agreements like the T&C may modify provisions of the Uniform Commercial Code (UCC). Minn. Stat. § 336.1-302(a) (2014) ("[T]he effect of provisions of the [UCC] may be varied by agreement.").

The T&C provides that "Copart reserves the right not to release any vehicle or vehicle title for any reason." Thus, Copart had the right not to release the corn head to Lubben and, by refusing to release the corn head, it exercised that right. Contrary to Lubben's view, the T&C does not implicitly restrict that right to unsold vehicles: reading such a restriction into the T&C would conflict with numerous other T&C provisions. Courts "construe a contract as a whole and attempt to harmonize all clauses of the

---

[3] Because we agree with this conclusion, we decline to address the district court's alternative reasons for granting summary judgment. Nor do we address whether a mutual mistake precluded the formation of a valid contract with the acceptance of Lubben's bid: because it was not raised to the district court, it is not properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the trial court in deciding the matter before it.").

contract." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990). As the district court noted, "the language of the [T&C] *entirely* favors Copart," and there is no basis for assuming that the right not to release vehicles would be restricted in such a way as to disfavor Copart.

Lubben also argues that "Copart had the ability—and the responsibility—to verify that it was listing and selling the correct equipment prior to the auction." But, in the T&C, Copart expressly declined responsibility for "the accuracy and completeness of any and all information provided to Members regarding vehicles. . . ." Moreover, by going to look at the corn head himself, Lubben indicated that he was aware that he needed to verify the vehicle information Copart provided.

The T&C unambiguously gave Copart "the right not to release" the corn head to Lubben and removed from Copart responsibility for "the accuracy and completeness of any and all information provided to Members regarding vehicles." The district court did not err when it "decline[d] to rework or otherwise reinterpret Copart's T&C in [Lubben's] favor" and relied on the T&C as a basis for summary judgment.[4]

---

[4] Lubben relies on the fact that a subsequent version of the T&C refers to Copart's right to cancel a sale "after the Member has remitted payment" to argue that the T&C he agreed to implicitly restricted Copart's right to cancel a sale to the time before a member remitted payment. But any subsequent version of the T&C is irrelevant here; the only relevant version is the version to which Lubben agreed. Moreover, Lubben offers no legal support for his view that, contrary to Minn. R. Evid. 407, a subsequent remedial measure such as revision of a contract term is admissible as evidence of culpable conduct.

## 2.    Motion for Costs and Attorney Fees[5]

On appeal, Copart moves for sanctions and attorney fees under Minn. Stat. § 549.211(2) (2014) and under Minn. R. Civ. P. 11 and Minn. R. Civ. App. P. 139.06. Lubben seeks the attorney fees and costs incurred in responding to that motion.

This court has the "authority to impose sanctions for frivolous appeal . . . that are based on frivolous argument" under Minn. Stat. § 549.211(2) and Minn. R. Civ. P. 11. *Federal Home Loan Mortgage Co. v. Mitchell*, 862 N.W.2d 67, 73 n.2 (2015) (citing Minn. R. Civ. P. 11; Minn. Stat. § 549.211, subds. 2, 4 (2014); Minn. R. Civ. App. P. 138; Minn. R. Civ. App. P. 139.06, subd. 1).

Copart argues that the appeal is frivolous because the terms of the T&C bar Lubben's recovery. We disagree with that argument and conclude that, while the T&C prevents Lubben from prevailing in this litigation, it does not prevent him from litigating the matter.

Copart also argues that Lubben's action is frivolous because he asked the district court and now asks this court to order Copart to commit conversion by taking the corn head from its rightful owner, GF, and giving it to him. It is true that a violation of Rule 11 does not require bad faith but only a failure to "investigate the factual and legal underpinnings of a pleading" for which "the imposition of sanctions is mandatory." *Uselman v. Uselman*, 464 N.W.2d 130, 142 (Minn. 1990), superseded by statute on other

---

[5] The district court denied Copart's motion for sanctions and attorney fees, concluding that "[Lubben's] arguments were non-frivolous under Minn. Stat. § 549.211(2) and were brought with a good faith basis under Minnesota law." Copart did not file a notice of review and does not challenge the denial of its motion.

grounds as stated in *Radloff v. First Am. Nat'l Bank of St. Cloud, N.A.*, 470 N.W.2d 154 (Minn. App. 1991). But it is also true that the rules for sanctions must be construed narrowly in order not to deter "legitimate or arguably legitimate claims." *Id.* Lubben's claim that, once his bid for the corn head was accepted, the corn head was his, was "arguably legitimate."

Both Copart's motion for sanctions and attorney fees and Lubben's motion for costs and attorney fees incurred in responding to that motion are denied; the summary judgment is affirmed.

**Affirmed; motions denied.**