*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0968**

Gordon Dodge,
Appellant,

vs.

Charlotte Stack,
Respondent.

**Filed May 2, 2016
Affirmed in part, reversed in part, and remanded
Klaphake, Judge**[*]

Washington County District Court
File No. 82-CV-14-295

Thomas H. Olive, Thomas H. Olive Law, P.A., Bloomington, Minnesota (for appellant)

Marna Wolf Orren, Klemp & Stanton, PLLP, Mendota Heights, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

In this shareholder dispute, appellant Gordon Dodge challenges the district court's findings and conclusions that respondent/cross-appellant Charlotte Stack was entitled to all of her clinical earnings and administrative pay. Stack challenges the district court's denial of indemnification and sanctions against Dodge. We affirm the district court's findings and conclusions regarding Stack's clinical earnings and administrative pay, and its denial of sanctions against Dodge, but we reverse the district court's denial of indemnification and remand for further proceedings.

## DECISION

## I.

"It is not the province of this court to reconcile conflicting evidence. On appeal, a [district] court's findings of fact are given great deference, and shall not be set aside unless clearly erroneous." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (citing Minn. R. Civ. P. 52.01). Under the clear-error standard, "we view the evidence in the light most favorable to the verdict" and determine whether "there is reasonable evidence in the record to support the court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted). A finding of fact is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). "When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *Porch v.*

*Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002) (quotation omitted), *review denied* (Minn. June 26, 2002).

***Clinical Earnings***

Dodge and Stack are the co-owners and sole shareholders of Lake Area Human Services, Inc. (LAHS). In the early years of LAHS, Dodge and Stack allocated expenses in proportion to the income that they brought to the business. Eventually, because Dodge and Stack started working an "approximately equal amount of time," they agreed to split expenses equally rather than calculate a proportional split. Under this system, Dodge and Stack each paid themselves 100% of their clinical earnings.

According to Dodge, when an attempted sale of LAHS fell through in 2007, Dodge and Stack agreed to discontinue their clinical practices and "build up [LAHS's] independent contractors" to increase LAHS's value. Stack later rebuilt her clinical practice and paid herself 100% of her clinical earnings. Dodge objected to these payments and proposed that, like LAHS's independent contractors, Stack give LAHS 50% of her clinical earnings to cover expenses. Dodge explained that Stack would actually receive 75% of her clinical earnings under his proposal because she would keep 50% of her earnings as compensation and receive another 25% as her portion of company profits. Stack did not agree to Dodge's proposal.

The district court examined the parties' clinical-earnings dispute:

> The [c]ourt finds that the last agreement reached by the parties concerning clinical pay was that each party would receive 100% [of] their clinical income. Accordingly, Stack would still be entitled to 100% of her clinical income, unless a different agreement is reached by the parties. The [c]ourt

3

recognizes that the situation of the parties in generating clinical income is different from when that agreement was reached.

Given this finding, the district court concluded: "Per the parties['] previous agreement, [Stack] properly paid herself 100% of her clinical income, and may continue to do so, unless an agreement is otherwise reached by the parties." Dodge challenges this finding of fact and conclusion of law regarding Stack's clinical earnings.

Dodge essentially argues that the district court clearly erred by not adopting his testimony in its factual findings. For example, Dodge cites his testimony that the only agreement between the parties was to divide expenses proportionally and that Stack should pay 50% of her clinical earnings to LAHS, consistent with LAHS's arrangement with independent contractors. But the record does not support Dodge's assertions. First, Dodge acknowledged at trial that the early arrangement regarding proportional division of expenses had changed and that the parties kept 100% of their clinical earnings prior to the 2007 attempted sale. Second, the record shows that one independent contractor keeps 60% of her clinical earnings and provides no information about the current compensation of any other independent contractors. Dodge does not explain why Stack should keep less of her clinical earnings than the one independent contractor who keeps 60%, or why Stack should suddenly be treated as an independent contractor after years of keeping 100% of her clinical earnings. In determining that Stack's retention of clinical earnings were proper, the district court necessarily found Stack's testimony and evidence more credible than Dodge's. We defer to the district court's credibility determinations, *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000), and view the evidence in the light most favorable to

4

the district court's determination, *Rasmussen*, 832 N.W.2d at 797. The district court did not clearly err by rejecting Dodge's assertions regarding the parties' agreement.

Dodge also argues that the finding on the split of clinical earnings was clearly erroneous because Stack failed to follow a LAHS bylaw requiring two officer signatures on all payments. The bylaw requires checks to be signed by (1) the treasurer, and (2) the president or vice president. Because Dodge and Stack were the only two officers, one of them could serve as both treasurer and president or vice president at the same time. Neither party followed this bylaw, and Dodge does not explain why Stack was suddenly required to do so after both parties had paid themselves without a second signature for almost 30 years. The previously-ignored bylaw was not triggered simply because Dodge disagreed with Stack's post-2007 compensation.

Although the parties are now in different positions than when they first agreed to pay themselves 100% of their clinical earnings, there is no evidence of any subsequent agreement or of any surviving previous agreement regarding this income. The record therefore supports the district court's finding that "the last agreement reached by the parties . . . was that each party would receive 100% [of] their clinical income." The district court's finding is not clearly erroneous. *See Rasmussen*, 832 N.W.2d at 797.

Dodge also challenges the district court's conclusion that Stack's payments were proper, arguing that Stack breached her duty as a corporate officer to act in good faith and in the best interests of the corporation. *See* Minn. Stat. § 302A.361 (2014) ("An officer shall discharge the duties of an office in good faith, in a manner the officer reasonably believes to be in the best interests of the corporation . . . ."). Dodge asserts that Stack acted

5

"only in her best interests" by paying herself 100% of her clinical earnings. But Dodge did not bring a breach-of-fiduciary-duty claim against Stack below and only briefly mentioned this issue in his memo to the district court without any citation to statutes or caselaw. In concluding that Stack's clinical-earnings payments were proper, the district court impliedly determined that Stack did not breach any official duties to LAHS. Because the record supports the district court's finding of fact regarding the parties' agreement to pay themselves 100% of their clinical earnings, the district court did not abuse its discretion in concluding that Stack's clinical-earnings payments were proper. *See Porch*, 642 N.W.2d at 477.

*Administrative Pay*

Historically, Dodge and Stack did not pay themselves for administrative work. At Dodge's request, the parties began paying themselves $25 per hour for administrative work in 2012. Dodge sought to cap the maximum amount that could be paid for administrative work per month, but Stack did not agree to a cap. In August 2014, Dodge and Stack entered a stipulation and order in which they agreed on a process to sell LAHS and agreed that, during the pendency of the sale, they would be paid for "properly documented administrative work at the agreed upon rate of $25.00 per hour up to a maximum of $1,000 per month."

At trial, Dodge challenged Stack's payments for administrative work between 2012 and August 2014, arguing that she failed to provide sufficient documentation and that she improperly paid herself for certain tasks, like being on call. The parties offered their job descriptions as exhibits. Stack testified that, according to the job descriptions, she had

6

more administrative duties than Dodge. Dodge denied that he had ever seen page two of Stack's job description and denied that page two described Stack's administrative duties. Other LAHS employees testified that their duties overlapped with Stack's and that Stack came to the office to perform administrative work about once or twice a month. Stack disagreed with this testimony, stating that the other employees work only part time and that she went to the office "at least a couple days a week." Stack also stated that she did "a lot" of administrative work at home.

The district court examined the parties' administrative-work dispute and found that "there was no agreement between the parties, prior to the August 4, 2014 Stipulation and Order, to cap administrative pay." As a result of this finding, the district court made two conclusions of law that Dodge challenges on appeal. First:

> The parties had previously reached an agreement to pay themselves $25 an hour for administrative work. While Dodge sought to have a cap in place Stack never agreed to this prior to the August 4, 2014 Stipulation. Given the evidence presented to the [c]ourt the [c]ourt finds that [Stack] did not improperly over pay herself in W-2 compensation for administrative duties.

Second:

> All administrative work should continue to be paid at $25 per hour, except for on-call work which shall be at the tiered system. The tiered system for on-call work [is] $15 per hour for availability and $35 per hour for actively handling calls.[1]

---

[1] Dodge claims to challenge this second conclusion of law, but does not provide any analysis regarding the tiered system for future administrative payments. Any argument regarding this tiered system is therefore waived. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

7

Dodge argues that the district court's finding and conclusions are erroneous because the parties had no "agreement to pay administrative compensation" at all. But the record clearly establishes an agreement, both through the parties' testimony about the payments for administrative work and through the documentation regarding such payments. And contrary to Dodge's assertion, LAHS's corporate bylaws do not prohibit such an agreement. LAHS's bylaws only require the directors to agree regarding the payment of "any dividends or making any distribution of profits." Because both parties testified that corporate dividends were separate from payments for administrative work, the bylaws do not require agreement regarding payments of administrative compensation.

Dodge also argues that Stack failed to justify her administrative pay, suggesting that she failed to provide proper documentation and that the testimony of the other LAHS employees shows that Stack performed only minimal administrative work. But Dodge erroneously places the burden on Stack to justify her compensation. As the plaintiff, Dodge had the burden to show that Stack's compensation was unjustified and to prove his damages. *See Rowe v. Munye*, 702 N.W.2d 729, 735 (Minn. 2005) (explaining that a party asking for damages has the burden to prove those damages). Dodge argues that some of Stack's "administrative compensation might be appropriate," and fails to identify any specific instances of inappropriate compensation. He therefore fails to prove his damages.

Regarding documentation, the district court reviewed the evidence Stack submitted at trial and concluded that it was sufficient. The district court also discussed the testimony of the other employees and Stack's testimony that she did not agree with their testimony, that the employees did not see her every time she went to the office, and that she performed

8

"a lot of administrative work" outside of the office. The district court's conclusion that Stack "did not improperly over pay herself . . . for administrative duties" was based on an implied credibility determination that Stack's testimony and documentation was more credible than the employees' and Dodge's testimonies. We defer to the district court's credibility determinations. *Vangsness*, 607 N.W.2d at 472.

The record supports the district court's determination that the parties agreed to pay $25 per month for administrative work but did not agree to cap this amount until the August 2014 stipulation. The district court's finding regarding a lack of a cap on administrative pay was therefore not clearly erroneous. *See Rasmussen*, 832 N.W.2d at 797. Further, the district court did not abuse its discretion by concluding that Stack's payments for administrative work were proper. *See Porch*, 642 N.W.2d at 477.

*Indemnification*

During the trial, Stack requested indemnification "to the extent she was responding to the lawsuit originally served on [LAHS] or as an officer of the corporation." Dodge opposed this request because his "intention in the suit was against [Stack] for her personal actions," not for her actions as a shareholder or officer. The district court did not explain its reasoning, but found that "Stack's legal fees were on behalf of her as [an] individual and not in her capacity as an officer or shareholder of LAHS." Stack challenges this finding in her related appeal.

If certain requirements are met, a corporation must indemnify a corporate officer or director who is made a party to a proceeding by reason of her official capacity. Minn. Stat. § 302A.521, subd. 2(a) (2014); *C.J. Duffey Paper Co. v. Reger*, 588 N.W.2d 519, 528

9

(Minn. App. 1999), *review denied* (Minn. Apr. 28, 1999). "Those requirements include that the officer has acted in good faith, received no improper personal benefit from the conduct at issue, reasonably believed that the conduct was in the best interests of the corporation, and has not been indemnified by another organization." *C.J. Duffey Paper Co.*, 588 N.W.2d at 528; *see* Minn. Stat. § 302A.521, subd. 2(a). Indemnification is "mandatory when the statutory requirements are met." *Asian Women United of Minn. v. Leiendecker*, 789 N.W.2d 688, 692 (Minn. App. 2010). Although the statutory requirements can be varied by corporate bylaws, *see* Minn. Stat. § 302A.521, subd. 4 (2014), they were not in this case. When seeking indemnification through a court order, the person seeking indemnification has the burden to show that she is entitled to indemnification. Minn. Stat. § 302A.521, subd. 6(a)(5) (2014).

The district court did not analyze the statutory requirements for indemnification because it found that Stack was not sued in her official capacity. The record does not support this finding. When Dodge sued Stack for conversion, he alleged that Stack disregarded the parties' agreements when paying herself, failed to properly document her expenditures, and "managed the business in a way and at odds with the expressed instructions of [Dodge.]" None of these alleged actions could have occurred if Stack were not a corporate officer. Dodge also alleged that LAHS was deadlocked because Stack "has acted fraudulently, illegally, and in a manner unfairly prejudicial toward . . . [Dodge], *in her capacity as a shareholder or director of the corporation*." (Emphasis added.) Finally, citing Minn. Stat. § 302A.361, Dodge now alleges that Stack breached her duty as a

10

corporate officer to act in LAHS's best interests. Dodge's suit was potentially related to Stack's role as a corporate officer.

Because the record does not support the district court's finding that Stack incurred legal fees in her personal, rather than official, capacity, we conclude that the district court's finding is clearly erroneous. *See Rasmussen*, 832 N.W.2d at 797. We therefore reverse on this point and remand for the district court to analyze the indemnification requirements in Minn. Stat. § 302A.521, subd. 2(a). *See Leiendecker*, 789 N.W.2d at 693 (reversing the district court's determination that the statute did not apply and remanding for the district court to analyze whether the appellant met the statutory requirements for advancement). We decline to perform this analysis for the first time on appeal. *See Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn. 1985) (explaining that a determination of good faith requires factual findings that this court cannot make on appeal).

## II.

Finally, Stack challenges the district court's denial of sanctions against Dodge. A court may impose sanctions if a pleading is presented for an improper purpose, frivolous under existing law, or not supported by the evidence. Minn. Stat. § 549.211, subds. 2, 3 (2014). A decision whether to award sanctions under section 549.211 rests within the district court's broad discretion. *Cargill Inc. v. Jorgenson Farms*, 719 N.W.2d 226, 234 (Minn. App. 2006).

Stack argues that she was entitled to sanctions because (1) Dodge's complaint was "vague"; (2) Dodge failed to review Stack's documentation during discovery; (3) Dodge was required to dismiss his suit after discovery because he should have known his claims

11

had no merit; (4) Dodge failed to meet his burden of proof at trial; and (5) Dodge now appeals "the unsubstantiated and unfounded compensation issues." But because the district court denied Stack's motion to dismiss following the presentation of Dodge's case-in-chief, he should not be subject to sanctions. *See Uselman v. Uselman*, 464 N.W.2d 130, 144 (Minn. 1990) (stating that a party who survived five motions for summary judgment or dismissal "with the major claims intact should not be subject to sanctions after trial predicated on these surviving claims"), *superseded by statute on other grounds as stated in Radloff v. First Am. Nat'l Bank of St. Cloud, N.A.*, 470 N.W.2d 154 (Minn. App. 1991), *review denied* (Minn. July 24, 1991). The denial of Stack's motion to dismiss suggests that Dodge's suit was not frivolous, had some evidentiary support, and was not presented for an improper purpose. *See* Minn. Stat. § 549.211, subd. 2; *Uselman*, 464 N.W.2d at 144-45 ("A party who has survived a summary judgment motion or a motion to dismiss certainly has no reason to believe that the court considers its claim or defense frivolous; indeed, the opposite is the case." (Quotation omitted).). Similarly, Dodge is not subject to sanctions simply for failing to prevail below or for exercising his right to appeal. *See Radloff*, 470 N.W.2d at 157 ("Sanctions are not appropriate merely because a party does not prevail on the merits"); *see also* Minn. R. Civ. App. P. 103.03(a) (providing a right to appeal from a final judgment).

The district court did not abuse its discretion by refusing to award Stack sanctions against Dodge. *See Cargill Inc.*, 719 N.W.2d at 234.

**Affirmed in part, reversed in part, and remanded.**